# REBUTTAL REPORT BY KIMBERLY HUGHES
# TO EVAN HENDRICKS' AND EDWIN JOHANSSON'S EXPERT REPORTS
# IN THE MATTER OF TOLIVER V. EXPERIAN INFORMATION SOLUTIONS, INC., ET AL

I.  **Background and Qualifications**

Since August of 1997, I have been employed with Experian Information Solutions, Inc. I began my career at Experian as a Customer Service Representative in the National Consumer Assistance Center (NCAC). On a daily basis, I assisted consumers who either believed that there was an inaccuracy on or had questions about information appearing on their Experian credit reports. In this capacity, I began building a wealth of knowledge and experience assisting consumers. I observed a vast array of circumstances that led consumers to contact Experian and the policies and procedures that Experian had in place to effectively and efficiently assist them. In July of 2000, I accepted a position as a Specialist within the Consumer Affairs Special Services (CASS) division of the NCAC. In this capacity, I assisted consumers who were represented by third parties with questions, concerns, or disputes regarding alleged inaccuracies appearing on their Experian credit reports. The third parties included, but were not limited to, attorneys, the Federal Trade Commission, and the Better Business Bureau. In 2001, I was promoted to Senior Legal and Compliance Specialist within CASS and began assisting with litigation research. During the ten (10) years that I held that position, in addition to assisting consumers on a daily basis, I researched a vast amount of consumer litigation cases. This research required that I analyze individual consumer contacts with Experian and the effectiveness of Experian's reinvestigation policies and procedures. I often made procedural and systemic recommendations intended to improve customer service and data integrity within Experian's consumer credit database. Also during this timeframe, I served as Experian's Corporate Representative and, in this capacity, I provided written and oral testimony in hundreds of federal litigation consumer cases regarding Experian's internal documents, records, letters,

1

memoranda and contacts with consumers and its policies and procedures in cases of disputed accuracy.

Since February 2011, I am employed as a Compliance and Litigation Analyst within Experian's Regulatory Compliance Department. My duties include the constant review of Experian's policies, procedures, and systems as they relate to its consumer credit reporting business. My duties also include making recommendations to mitigate risks and improve various policies and procedures, as appropriate. In addition, I analyze Experian's credit reporting processes in connection with litigation filed by consumers against Experian and provide oral and written testimony in connection with my analysis.

During my tenure with Experian, in addition to working intimately within the NCAC, I also have worked closely with many other business units at Experian. Due to extensive research I have become familiar with the procedures that Experian employs to assure maximum possible accuracy in gathering and storing credit information and assembling credit reports and consumer disclosures. I have not been compensated for developing this report, other than through my salary as an Experian employee.

## II.   Opinions and Basis

I have been asked by Counsel for Experian to review and evaluate the respective Opening Expert Reports of Evan Hendricks and Edwin Johansson, prepared on behalf of Plaintiff, Denise Toliver. Please find below a summary of my findings.

- Plaintiff's Experts erroneously claim that Experian's classification of LVNV as a debt buyer/factoring company was inaccurate and/or misleading.

- Plaintiff's Experts opine that accounts reported by debt buyers/factoring companies are viewed as a "new derogatory" and super-recent."

- Plaintiffs' Experts provide opinions which are based on the erroneous assertion that a collection account reported by a debt buyer or factoring company has a larger negative impact on a credit score than a collection account reported by a third party collection agency or attorney.

- Plaintiffs' Expert erroneously states that when an original creditor sends, transfers or sells an outstanding debt to a third party for collection, such as in this case, they are "Re Aging" the debt and it is viewed as a new derogatory item.

I disagree with the above assertions made by Mr. Hendricks and Mr. Johansson and the opinions expressed in their respective reports based on those assertions.

My background differs from Plaintiff's Experts in that I have worked in the industry for almost 15 years, specifically working proactively with consumers on a daily basis regarding information appearing in their consumer credit files. I am intimately familiar with how the credit industry, and most importantly Experian, operates. From day one, as an employee of Experian, I have been challenged to find better, smarter ways to run the business, ensure data accuracy and integrity and provide excellent customer service. I am intimately familiar with the policies and procedures in place at Experian to ensure the Maximum Possible Accuracy of the information it maintains and reports. As employees of Experian, we are all responsible for maintaining critically important credit information on millions of consumers. Consumers rely on Experian's information to be accurate, as do the subscribers of Experian.

3

### A. Metro 2® Format

The Metro 2® Format was developed by the Consumer Data Industry Association (hereinafter referred to as CDIA) as a standard format for the entire credit reporting industry to facilitate reporting of the most accurate and complete information on a consumer's credit history. CDIA is the trade industry association that represents among others, the consumer credit reporting, mortgage reporting and collection service industries. Metro 2® Format is designed to meet a comprehensive list of reporting requirements, including those required by the Fair Credit Reporting Act (FCRA).

The CDIA publishes a Credit Reporting Resource Guide® (hereinafter referred to as the CRRG) which is essentially a road map for reporting consumer credit information. Experian provides all of its data furnishers with complete instructions for downloading the Metro 2® Format, a copy of the CRRG and a link to the CDIA website which includes a comprehensive list of training tools available to all data furnishers.

### B. Collection Accounts

Pursuant to the industry guidelines, a collection account, whether reported by a debt buyer or a third party collection agency/attorney should be reported with ***ONLY*** the following account status codes:

- 93 (Account assigned to internal or external collections.)
- 62 (Paid in full, was a collection account.)
- DF (Delete entire account due to confirmed fraud.)
- DA (Delete entire account for reasons other than fraud.)

4

The LVNV Funding account that is the subject of Plaintiffs' experts' reports, was reporting with status code 93. It is important to note that whether or not LVNV was classified as a debt buyer or third-party collection agency, this status code would remain the same.

According to the CRRG, in the credit reporting industry there are three possible account type designations for collection accounts that are being collected on by an entity other than the original creditor. In this case, LVNV purchased a debt from Sears and now owns and is collecting the debt. Those codes are as follows:

- 0C (Debt Buyer)
- 48 (Collection Agency/Attorney)
- 77 (Returned Check)

The LVNV Funding account that is the subject of Plaintiffs' experts' reports, was reporting with account type code 0C. The classification that LVNV was a debt buyer or factoring company was not determined by Ms. Toliver's individual account, but instead was the classification assigned to LVNV based on the type of business which they operate. Evan Hendricks eludes that this was some ill thought out choice when he states that "Defendants permitted the LVNV account to be portrayed as a 'Factoring Company Account' (or 'Debt Buyer Account'), using Metro 2 Code '0C'."[1] When, in fact, reporting their account type as anything else would be misleading and inaccurate. Had the debt been reported with account type "77" it would have been designated as a returned check, which is certainly not accurate. The only other option according to the industry guidelines would have been account type code "48" indicating collection agency/attorney.

---

[1] Expert Report of Evan Hendricks page 1

5

Given the fact that LVNV is not collecting on behalf of another entity, as they actually purchased and own the debt, this designation would also be inaccurate.

Supporting this classification I reference http://www.lvnvfunding.com where LVNV provides a company overview which states that LVNV purchases domestic and international consumer debt owned by credit grantors. It goes on to state, "as the owner of any debt previously owned by another creditor, LVNV's name may appear on a customer's credit report." Plaintiff's other expert, Mr. Johansson makes the statement in his report that "LVNV does not create debts they buy debts."[2] I concur with Mr. Johansson, LVNV buys debts and therefore they are a debt buyer. Thus, the correct and accurate account type classification code for a debt being reported by LVNV Funding would be "0C", the very code that was accurately being reported by Experian for the account owed by Ms. Toliver.

Mr. Johansson goes on in an attempt to defend his incorrect and dis-jointed theory that because the account type was classified as a debt buyer/factoring company, account type "0C", that the account was seen as a current, open derogatory. Under oath, in his deposition, he stated, "If they're going to report 0C factoring, then they must report open, account type open."[3] This again demonstrates his lack of knowledge regarding reporting practices within the industry. When a collection account is reported, regardless if it is a debt buyer/factoring company or a collection agency, the account will be reported and viewed as paid or unpaid. A collection account is reported via status code "93", as explained above. Although this does not trigger an official account condition of "open", an unpaid collection account is considered due and owing. As such the fact that Ms. Toliver's LVNV account was viewed as currently being due and owing

---

[2] Expert Report of Edwin Johansson; page 14
[3] Expert Deposition of Edwin Johansson; page 289, lines 4-6

6

had nothing to do with anything other than the fact that she had not made payment in full for the debt that was owed. It was accurately reported.

### C.    Credit Scores

A credit score is a tool that lenders use to analyze the information contained in a credit report. The credit score is designed to predict the level of risk a creditor will assume should they extend credit to the applicant. The score itself is derived from a mathematical algorithm that takes numerous factors into consideration. The algorithms and formulas are unique and proprietary to each of the individual scoring models available in the credit industry.

The most common model used throughout the industry today is owned and issued by Fair Isaac and Company, also known as FICO. The FICO algorithm considers a consumers payment history, the amount of their current debt, length of their credit history, evaluation of new accounts and the types of credit that the consumer uses. According to FICO's website, a consumer's payment history makes up 35% of the FICO score and the types of credit used only 10%. Finishing out the calculation method, 30% of the FICO score is attributed to the amounts owed, 15% to the length of one's credit history and the final 10% to new accounts.

The weighted categories listed above demonstrate the importance that the FICO score, and scoring models in general, place on a consumer's payment history. According to myfico.com, the account types considered for payment history are credit cards, retail accounts, installment loans, public records and collection items. It goes on to state that the details considered on late payments and collection items are as follows:

- How late were they
- How much was owed
- How recently they occurred
- How many there are

Using the information contained in Plaintiff's March 4, 2010 credit disclosure as an example to answer the relevant questions that would be evaluated based on the FICO criteria above, there were five (5) collection accounts collectively reporting that $17,298.00 was past due and owing. Three (3) of them were reported from Asset Acceptance as open since January of 2008, one (1) from Cavalry Portfolio Servicing as open since May of 2007 and one (1) from LVNV Funding as open since March of 2006. In addition to the collection accounts, the following delinquent information also appeared on Ms. Toliver's credit disclosure:

- A revolving account reported by Bank of America that after a running delinquency leading up to and including 180 days was Charged Off in March of 2006.
- A revolving account reported by Chase Bank that prior to being transferred in December of 2007 had reached a status of delinquent 180 days.
- A revolving account reported by Sears that prior to being transferred in January of 2006 had reached a status of 180 days delinquent.
- A revolving account reported by WFNNB/Express that prior to being transferred in November of 2007 had reached a status of 180 days delinquent.
- A revolving account reported by WFNNB/Limited that prior to being transferred in December of 2007 had reached a status of 180 days delinquent.

Case 4:12-cv-02436   Document 42-8   Filed on 06/14/13 in TXSD   Page 9 of 18

- A revolving account reported by WFNNB/Victorias Secret that prior to being transferred in December of 2007 had reached a status of 180 days delinquent.

Despite the amount of her past due debt, and the number of potentially negative and mostly derogatory accounts listed on Ms. Toliver's credit disclosure, Edwin Johansson opined that had LVNV not reported as a factoring company that Ms. Toliver's credit score would "still be high", and he further stated, "I confidently estimate an accurate FICO score for Mrs. Toliver to be in the 700 to 730 range." Due to the number of delinquent items appearing on the report, and the complicated nature of the confidential and proprietary scoring algorithm used by FICO, it is my opinion that it would not be possible for any expert to speculate on what specific impact any one item would have had on Ms. Toliver's credit score.

### D. Adverse Action Codes

When a consumer receives a credit score, it is accompanied by a list of factors, or adverse action codes that most prominently impacted the consumer's score. The factors will relate to the information that was contained within the consumer's credit report when it was scored. Following is the list of FICO adverse action codes:

| Code Text | Adverse Action Reason |
| --- | --- |
| 1 | AMOUNT OWED ON ACCOUNTS IS TOO HIGH |
| 2 | LEVEL OF DELINQUENCY ON ACCOUNTS |
| 3 | TOO FEW BANK/NATIONAL REVOLVING ACCOUNTS |
| 4 | TOO MANY BANK/NATIONAL REVOLVING ACCOUNTS |

9

| | |
|---|---|
| 5 | TOO MANY ACCOUNTS WITH BALANCES |
| 6 | TOO MANY CONSUMER FINANCE COMPANY ACCOUNTS |
| 7 | ACCOUNT PAYMENT HISTORY IS TOO NEW TO RATE |
| 8 | TOO MANY INQUIRIES LAST 12 MONTHS |
| 9 | TOO MANY ACCOUNTS RECENTLY OPENED |
| 10 | RATIO OF BALANCE TO LIMIT ON BANK REVOLVING OR OTHER REV ACCTS TOO HIGH |
| 11 | AMOUNT OWED ON REVOLVING ACCOUNTS IS TOO HIGH |
| 12 | LENGTH OF TIME REVOLVING ACCOUNTS HAVE BEEN ESTABLISHED |
| 13 | TIME SINCE DELINQUENCY IS TOO RECENT OR UNKNOWN |
| 14 | LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED |
| 15 | LACK OF RECENT BANK/NATIONAL REVOLVING INFORMATION |
| 16 | LACK OF RECENT REVOLVING ACCOUNT INFORMATION |
| 17 | NO RECENT NON-MORTGAGE BALANCE INFORMATION |
| 18 | NUMBER OF ACCOUNTS WITH DELINQUENCY |
| 19 | TOO FEW ACCOUNTS CURRENTLY PAID AS AGREED |
| 20 | TIME SINCE DEROGATORY PUBLIC RECORD OR COLLECTION IS TOO SHORT |
| 21 | AMOUNT PAST DUE TO ACCOUNTS |
| 22 | SERIOUS DELINQUENCY, DEROGATORY PUBLIC RECORD OR COLLECTION FILED |

| 24 | NO RECENT REVOLVING BALANCES |
|---|---|
| 25 | LENGTH OF TIME INSTALLMENT LOANS HAVE BEEN ESTABLISHED |
| 26 | NUMBER OF REVOLVING ACCOUNTS |
| 28 | NUMBER OF ESTABLISHED ACCOUNTS |
| 30 | TIME SINCE MOST RECENT ACCOUNT OPENING IS TOO SHORT |
| 31 | TOO FEW ACCOUNTS WITH RECENT PAYMENT INFORMATION |
| 32 | LACK OF RECENT INSTALLMENT LOAN INFORMATION |
| 33 | PROPORTION OF LOAN BALANCES TO LOAN AMOUNTS IS TOO HIGH |
| 34 | AMOUNT OWED ON DELINQUENT ACCOUNTS |
| 36 | LENGTH OF TIME OPEN INSTALLMENT LOANS HAVE BEEN ESTABLISHED |
| 37 | NUMBER OF FINANCE COMPANY ACCOUNTS ESTABLISHED RELATIVE TO LENGTH OF FINANCE HISTORY |
| 38 | SERIOUS DELINQUENCY AND PUBLIC RECORD OR COLLECTION FILED |
| 39 | SERIOUS DELINQUENCY |
| 40 | DEROGATORY PUBLIC RECORD OR COLLECTION FILED |
| 98 | LACK OF RECENT AUTO LOAN INFORMATION |
| 99 | LACK OF RECENT CONSUMER FINANCE COMPANY ACCOUNT INFORMATION |

As one can see in the chart above, there is no adverse action code related to the presence of a factoring company or debt buyer. Mr. Hendricks states that an account reported by a debt buyer

11

or factoring company "makes the credit scoring models think that instead of being an old collection that does minimal damage to Plaintiff's credit score, it is a new, 'super recent' or 'fresh' derogatory account that inflicts profound damage on the Plaintiff's credit score." Plaintiff has produced third party credit reports from Sarma, which indicate they were prepared for Patriot Bank – West Houston #22. The earliest report bears a request date of 10/3/2011 and a completed date of 10/3/2011. Page 9 of this 14 page report contains a collection entry from LVNV Funding and lists a date opened of March 2006, a past due balance of $5293.00, a last date of activity with the original creditor of August 2, 2005 and clearly states that it is a factoring company account. On that report, there appear to be two credit scores related to Experian data and with each of those there codes indicating what about the report caused the score to reflect as it does.

### XPN/FAIR, ISAAC MODEL II

- 38    Serious Delinquency and Public Record or Collection Filed
- 33    Proportion of Loan Balances to Loan Amounts is Too High
- 24    No Recent Revolving Balances
- 14    Length of Time Accounts Have Been Established

The second report provided from Sarma bears a request date of 10/3/2011 and a completed date of 10/17/2011. Page 9 of this 14 page report contains the same collection entry from LVNV Funding and again lists a date opened of March 2006, a past due balance of $5293.00, a last date of activity with the original creditor of August 2, 2005 and still states that the reporter of the debt is a factoring company. On that report, there are again two credit scores related to Experian data and with each of those there codes indicating what about the report caused the score.

The codes listed for the respective Experian related scores on this report are as follows:

**XPN/FAIR, ISAAC MODEL II**

- 38  Serious Delinquency and Public Record or Collection Filed
- 13  Time Since Delinquency is Too Recent or Unknown
- 18  Number of Accounts With Delinquency
- 21  Amount Past Due to Accounts
- Too Many Inquiries Last 12 Months

In only 1 out of 2 scores that related to Experian data, was timing of any delinquency mentioned. Although score factor 13 speaks for itself, I must point out that is states "time since delinquency is too recent *or unknown*." Since the same data elements regarding the age of the LVNV account are consistent in both reports and in both reports the type of furnisher is listed as a factoring company, I find his opinion that a collection account reported by a factoring company is more derogatory and perceived as a "super fresh" compared to a collection account reported by a collection agency to be baseless and without merit.

### III. Conclusion

In the time I was given to rebut the opinions expressed by Mr. Evan Hendricks and Mr. Edwin Johansson, I was able to determine numerous facts which contradict the findings in their respective reports. Based on the information contained in the expert reports of Hendricks and Johansson, I believe that their mis-understanding of the Metro 2® industry codes render their opinions on the subject matter baseless. Due to the quantity of derogatory information contained in Ms. Toliver's report and the complex nature of the FICO scoring model and algorithm, it is my opinion that neither Mr. Johansson nor Mr. Hendricks can offer a reliable opinion as to the

effect, if any, that LVNV had on Ms. Toliver's credit score. Finally, the fact that LVNV was reporting with an account type of "0C" (debt buyer/factoring company) and a status code of "93" (collection) was accurate information.

## IV.     Data and Other Information Considered in Forming Opinions

In forming the above opinions, I relied upon my years of experience in the consumer credit reporting field, and the knowledge I have acquired over the years regarding consumer credit reporting in general, Experian's credit reporting system my expertise and vast experience in working with consumers while utilizing Experian's dispute handling policies and procedures. I also relied upon the Opening Expert Reports submitted by Mr. Evan Hendricks and Mr. Edwin Johansson and the Expert deposition testimony given by Mr. Edwin Johansson. I also reviewed and relied upon the documents that have been exchanged during this litigation. I reserve the right to supplement this report based on a comprehensive study of any additional documents as well as any further information regarding this case that becomes available.

May 24, 2013

*Kimberly Hughes* (signature)

Kimberly Hughes

# EXHIBIT A

## Curriculum Vitae May 2013

Kimberly Hughes
Compliance and Litigation Analyst
Experian Information Solutions, Inc.
601 Experian Parkway, Allen, TX 75013

**Education**
    **Stephen F. Austin State University** (1991 – 1993)
        -English Major field of study with Emphasis in Education
        - Minor study in Kinesiology

**Employment History**
    **Experian Information Solutions, Inc**
        - Compliance and Litigation Analyst (February 2011 to present)
        - Consumer Affairs Special Services,
            Senior Legal and Compliance Specialist (July 2001 – February 2011)
        - Consumer Affairs Special Services, Specialist (July 2000 to July 2001)
        - Customer Service Representative (August 1997 to July 2000)
    **First Merchants Acceptance**
        -Credit Investigator (September 1996 – August 1997)
    **Collin County Sherriff's Office**
        -Police Dispatcher and 911 Operator (July 1995 – July 1996)

**Training**
    Consumer Data Industry Association (CDIA) Fair Credit Reporting Act Certification
    Experian related training:
- NCAC Investigation Training
- The Leadership Edge
- Information Security Awareness
- Profile Maintenance and Special Handling
- Credit Score Overview
- Professionalism Skills Workshop
- Automated Data Flow
- Power of the PIN
- File One / Administrative Credit Reports
- California Senate Bill 168
- Promoting a Respectful Workplace
- Trade Secrets and Confidential Information – Your Obligations
- Information Security Policy at Experian

15

- Consumer Fraud Procedures Refresher Course
- CAPS: No Record Training
- Listening, Influencing and Handling Tough Situations
- Consumer Profile Maintenance
- Intellectual Property at Experian – Protecting and Respecting Intangible Assets
- Security Freeze Training
- Consumer Credit Data – Reporting, Storage and Display
- Achieving Customer Service Excellence
- Personalizing the Customer Experience
- Vantage Score
- Ethical Principles and Fraud Prevention
- Consumer Compliance: Data Furnishers
- Automated Data Flow 2012
- Power of the PIN 2012

# EXHIBIT B

# LIST OF CASES

**Jamon T. Brim v. Dell Financial Services, LLC, et al.,** United States District Court for the Northern District of Alabama, Case No. 5:10-cv-00369-IPJ (30(b)(6) Deposition Testimony)

**Carla Paul v. Experian Information Solutions, Inc.,** et al, United States District Court for the District of Minnesota, Case No. 0:09-cv-01102-DSD-AJB (Expert Affidavit)

**Kim Brown v. Wal Mart Stores, Inc., et al.,** United States District Court for the Western District of Tennessee, Memphis Division, Case No. 2:09-CV-2148 (Affidavit)

**Sylvia A. Nelson v. Experian Information Solutions, Inc.** , United States District Court for the District of South Carolina, Case No. 3:10-cv-02200-JFA (30(b)(6) Deposition Testimony)

**Nickalas & Megan Bradshaw v. BAC Home Loans Servicing, LP; et al.,** United States District Court, District of Oregon, Case No. 10-0438-HA (Expert Report)

**David Osada v. Experian Information Solutions, Inc.,** U.S. District Court, Northern District of Illinois, Case No. 1:11-CV-02856 (30(b)(6)( Deposition Testimony)

**Laura M. Jones v. Experian Information Solutions, Inc. and Capital One Bank U.S.A., N.A,** United States District Court for the Eastern District of Virginia, Case No. 1:11-cv-826-CMH-TCB (Expert Report)

**William G. Stewart and Nancy Stewart v. BAC Home Loans Servicing, LP, et al.,** United States District Court, Northern District of California, Case No. CV 3:10-CV -01225SI (30(b)(6) (Deposition Testimony and Expert Reports)

**Tamberly Tannehill v. Experian Information Solutions, Inc**., United States District Court, Western District of Kentucky, Louisville Division, Case No. 3:11CV-396-R (Expert Report)

**Saif Mokel v. Experian Information Solutions, Inc.,** United States District Court, Eastern District of Virginia, Alexandria Division, Case No. 1:12-CV-00585-JCC-JPA (30(b)(6) Deposition Testimony)

**Phillip David Haskett v. Experian Information Solutions, Inc.,** United States District Court, Eastern District of Texas, Case No. 9:12-CV-0027 (Expert Report)

**Jose Luis Calderon v. Experian Information Solutions, Inc.,** United States District Court, District of Idaho, Case No. 1:11-CV-00386-EJL (Expert Report)

**Debra A. Ward v. Experian Information Solutions Inc.,** United States District Court, Eastern District of Wisconsin, Case No. 2:12-CV-00229 (30(b)(6) Deposition Testimony)

**James Singletery v. Experian Information Solutions, Inc.,** United States District Court, Northern District of Alabama, Southern Division, Case No: CV-12-P-2104-S (30(b)(6) Deposition Testimony)

**Johnnie G. Bryant, Jr. v. Experian Information Solutions, Inc**., United States District Court, District of South Carolina, Florence Division, Case No. 4:12-CV-01370 TLW (30(b)(6) Deposition Testimony)

**Kamaladoss Selvam v. Experian Information Solutions, Inc.,** United States District Court, Eastern District of New York, Case No. 12-CV-1828 (30(b)(6) Deposition Testimony)