# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

DENESE TOLIVER,

     Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS,
INC., TRANS UNION, LLC, and
LVNV FUNDING, LLC,

    Defendants.

CIVIL ACTION NO.
4:12-cv-02436-LAKE

## TRANS UNION LLC'S MOTION TO STRIKE
## PLAINTIFF'S EXPERT EDWIN JOHANSSON

**GINNY E. WEBB**
Texas Bar No. 24047462
Southern District Bar No. 1111061
ginny.webb@strasburger.com
(469) 287-3907
(469) 227-6581 Fax
**PAUL L. MYERS**
Texas Bar No. 14765100
Southern District Bar No. 11228
**ALLISON A. REDDOCH**
Texas Bar #24076912
Southern District of Texas Bar No. 1383222
**STRASBURGER & PRICE, LLP**
2801 Network Boulevard, Suite 600
Frisco, TX 75034
Counsel for Defendant Trans Union LLC

# TABLE OF CONTENTS

**Page(s)**

SHORT STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.................v

STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT........................v

SUMMARY OF THE ARGUMENT ........................................................ vi

CONCLUSION......................................................................... vi

I.      INTRODUCTION .............................................................1

II.     BACKGROUND ...............................................................2

        A.      Plaintiff's Claims ...............................................2

        B.      Designation of Johansson as Plaintiff's Expert and Rebuttal Expert .....................3

III.    ARGUMENT AND AUTHORITIES ................................................4

        A.      Expert Qualification and Reliability Standards .....................4

        B.      Johansson is Not Qualified to Testify as an Expert .................6

                i.      Johansson Lacks the Requisite Experience to Testify Regarding FICO's Scoring Methods and Procedure .................6

                ii.     Johansson Lacks the Requisite Education or Training to Testify Regarding FICO's Scoring Methods and Procedure .................7

                iii.    Johansson Lacks Specialized Knowledge to Testify Regarding FICO's Scoring Methods And Procedure .................8

                iv.     Johansson Is Not Qualified to Testify Regarding Trans Union's Policies And Procedures .................9

        C.      An Expert's Opinion Must Be Reliable .............................10

                i.      Johansson's Opinions Relating to the Impact of the LVNV Account on Plaintiff's FICO Credit Scores Are Unreliable Because They Are Based on Speculation and Lack Adequate Foundation .............11

                ii.     Johansson Cannot Explain His Methodology ...........................14

                iii.    Johansson's Opinions: Are Not Based on Sufficient Data .........14

                iv.     Johansson's Opinions Fail to Account for Alternative Explanations ........15

v.    Johansson's Opinion that LVNV Inaccurately Used Account Type "O" is Unreliable because it Lacks Adequate Foundation........................18

vi.    Johansson's Opinion that LVNV Inaccurately Used Loan Type "0C" is Unreliable because it Lacks Adequate Foundation......................19

vii.    Johansson's Opinions Relating To Additional "Hidden Data" on Trans Union Credit Reports are Unreliable Because They Lack Foundation ...............................................................................21

D.    Johansson's Opinions Will Not Aid the Jury in Their Determination..................23

E.    Johansson Should Also Be Excluded Because He Failed To Comply With The Federal Rules of Civil Procedure....................................................23

IV.    CONCLUSION...............................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Brown v. Parker-Hannifin Corp.*,
    919 F.2d 308 (5th Cir. 1991) ...............................................................................11

*Cadle Co. v. Sweet & Brousseau, P.C.*,
    2006 U.S. Dist. LEXIS 6862 (N.D. Tex. Feb. 23, 2006)...................................5, 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    43 F.3d 1311 (9th Cir. 1995) ................................................................................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)..............................................................v, 4, 10, 11, 14, 15, 18

*De Luna v. Hidalgo County*,
    853 F. Supp. 2d 623 (S.D. Tex. 2012) .................................................................15

*Huss v. Gayden*,
    571 F.3d 442 (5th Cir. 2009) .................................................................................4

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999)..........................................................................................5, 10

*Mathis v. Exxon Corp.*,
    302 F.3d 448 (5th Cir. 2002) .................................................................................5

*Milward v. Acuity Specialty Prods. Group*,
    639 F.3d 11 (1st Cir. 2011)..................................................................................15

*Munoz v. Orr*,
    200 F.3d 291 (5th Cir. Tex. 2000) .......................................................................15

*Prepaid Wireless Servs. v. Southwestern Bell Wireless, Inc.*,
    2002 U.S. Dist. LEXIS 28229 (S.D. Tex. July 23, 2002)....................................15

*Sullivan v. Rowan Cos., Inc.*,
    952 F.2d 141 (5th Cir. 1992) ..............................................................................4, 5

*Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*,
    438 F. Supp. 2d 696 (E.D. Tex. 2006)...................................................................5

*United States v. Cooks*,
    589 F.3d 173 (5th Cir. 2009) .................................................................................7

*United States v. Downing*,
    753 F.2d 1224 (3d Cir. 1985)..............................................................................18

# TABLE OF AUTHORITIES
*continued*

**Page(s)**

*United States v. Hicks*,
389 F.3d 514 (5th Cir. 2004) ................................................5

*Viterbo v. The Dow Chem. Co.*,
826 F.2d 420 (5th Cir. 1987) ............................................10, 11, 12, 15

*Wilson v. Woods*,
163 F.3d 935 (5th Cir. 1999) ............................................5, 7

**FEDERAL STATUTES**

Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. (the "FCRA").....................................v, 2, 7

Fair Credit Reporting Act, 15 U.S.C. § 1681i(a)(1)(a) ................................................27

**FEDERAL RULES**

Fed. R. Civ. P. (a)(2)(B)(i)................................................x

Fed. R. Civ. P. 26 ................................................23

Fed. R. Civ. P. 26(a)(2)(B)(i) and 26(a)(2)(B)(iv)................................................23

Fed. R. Evid. 104(a)................................................4

Fed. R. Evid. 702 ................................................4, 5, 6, 7, 10, 14, 15

Fed. R. Evid. 702 and 703................................................5

Fed. R. Evid. 703 ................................................11

**OTHER AUTHORITIES**

Barron's Law Dictionary 326 (2d ed. 1984)................................................19

**SHORT STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

Plaintiff has alleged that Trans Union LLC ("Trans Union"), one of the Defendants herein, violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681, et seq. Specifically, Plaintiff claims that Trans Union both negligently and willfully violated §§1681e(b) and 1681i of the FCRA. In support of her claims, Plaintiff has designated Edwin Johansson ("Johansson") and Evan Hendricks ("Hendricks") as expert witnesses on credit scoring and FCRA issues. Trans Union has conducted extensive discovery, including taking the depositions of both Johansson and Hendricks. Further, Trans Union filed its Motion for Summary Judgment on June 13, 2013. In addition to this Motion, Trans Union will move to strike Hendricks as well as Debra Wilson and Josh Moody, two rebuttal experts designated by Plaintiff.

**STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT**

1. Trans Union moves the Court to strike Plaintiff's expert, Johansson. Johansson was retained by Plaintiff to offer opinions regarding the principles and methods of FICO credit scoring and the procedures by which creditors furnish to consumer reporting agencies ("CRA").[1] Johansson should be stricken and his opinions and testimony excluded on two grounds. First, Johansson is not qualified to testify as an expert pursuant to the standards articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Rule 702 of the Federal Rules of Evidence because he does not possess the requisite knowledge, skill, education, experience, or training. *See Daubert,* 509 U.S. at 579; Fed. R. Evid. 702. Second, Johansson's opinions and conclusions do not meet the standards of reliability required and will not aid the jury in its decision-making process. *See Daubert,* 509 U.S. at 579; Fed. R. Evid. 702. Accordingly, Trans Union seeks an order from this Court striking Johansson as an expert and precluding Plaintiff from offering any testimony from Johansson at any stage in this case.

---

[1] Plaintiff's Designation of Experts also indicates that Johansson will testify regarding defendant's reinvestigations of Plaintiff's disputes. *See* TU App. pp. 438, Ex. I at p. 5. However, Johansson offered no opinions regarding Trans Union's reinvestigation in his report. Accordingly, pursuant to Federal Rule of Civil Procedure 26(a)(2)(B)(i), Johansson should be precluded from offering any opinions regarding Trans Union's reinvestigation as no opinions were offered regarding same in his expert report.

## SUMMARY OF THE ARGUMENT

Johansson is neither qualified to testify as an expert nor are his proffered opinions reliable such that they will assist the jury. The Court should strike Johansson in his entirety because: (1) he lacks the requisite experience to testify regarding FICO's scoring methods and procedure; (2) he lacks specialized knowledge to testify regarding FICO's scoring methods and procedure; and (3) he is not qualified to testify regarding Trans Union's policies and procedures.

## CONCLUSION

Therefore, Trans Union respectfully requests that the Court to grant its Motion to Strike Johansson and that the Court exclude his testimony in its entirety.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

DENESE TOLIVER,

      Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS,
INC., TRANS UNION, LLC, and
LVNV FUNDING, LLC,

      Defendants.

CIVIL ACTION NO.

4:12-cv-02436-LAKE

## TRANS UNION LLC'S MOTION TO STRIKE
## PLAINTIFF'S EXPERT EDWIN JOHANSSON

TO THE HONORABLE JUDGE SIM LAKE:

      COMES NOW TRANS UNION LLC ("Trans Union"), one of the Defendants in the above-styled and numbered cause, and files this, its Motion to Strike Plaintiff's Expert Edwin Johansson, and would respectfully show the Court as follows:

### I. INTRODUCTION

      1.      Math is an essential skill that you learn as early as pre-school. There is simple math, like addition and subtraction, and advanced math, like calculus and quantum mechanics. The world cannot function without math. After all, how could you do simple things like calculate the change owed to you at the grocery store without math? Now imagine a world that instead of using the cash register, the cashier at Kroger simply hands you what she "feels" your change should be. Or even scarier, a highway was built based on what an engineer "estimated" was the accurate angle and degree of slope. Is this the kind of expertise you would feel comfortable relying on? The answer is of course, no. Yet Plaintiff is doing just that. In a case that revolves around an alleged change in her FICO credit score, Plaintiff designated Johansson as an expert, but Johansson admits he doesn't know the FICO credit scoring algorithm used to

calculate Plaintiff's credit score. Instead, Johansson "feels" he can "estimate" what Plaintiff's FICO credit score "should be." In effect, Plaintiff seeks to rely on her expert's feelings and estimates instead of designating an expert that actually knows the FICO credit scoring algorithm. This is not expert testimony in the sense of Rule 702 or the case law and the Court should strike Johansson.

## II. BACKGROUND

### A. Plaintiff's Claims.

2. Plaintiff sued Trans Union and two other Defendants alleging violations of the FCRA.[2] Specifically, Plaintiff claims that Trans Union violated § 1681e(b) of the FCRA by not following reasonable procedures to assure maximum possible accuracy of her credit file and § 1681i(a)(1)(a) of the FCRA by failing conduct a "good faith" reinvestigation into Plaintiff's dispute.[3] Plaintiff claims LVNV Funding, LLC ("LVNV") inaccurately reported an account (the "LVNV Account") on her Trans Union credit report.[4] Plaintiff does not complain that the LVNV Account is not hers nor does she dispute the debt, but rather she complains that the LVNV Account was inaccurately reported with incorrect codes for account type and portfolio type.[5]

3. Plaintiff also claims that Trans Union failed to conduct a reasonable reinvestigation of the LVNV Account after receiving her dispute.[6] On December 15, 2011, Trans Union received a letter from Plaintiff's attorney disputing the LVNV Account.[7] Plaintiff claims that because the LVNV Account was reported as a Factoring Company Account, with the code "0C," and as an "open" account, it caused her FICO credit score to be drastically lower.[8] At the time of Plaintiff's dispute, her Trans Union credit file contained eleven (11) derogatory

---

[2] *See generally* Dckt. No. 1, Complaint.
[3] *See id.* at ¶13.
[4] *Id.*
[5] *See generally id.*
[6] *Id.* at ¶13.
[7] *Id.* at ¶40.
[8] *Id.* at ¶40.

accounts, including the LVNV Account. Despite this fact and without any foundation, Plaintiff claims the LVNV Account is the sole cause for the reduction in her FICO credit score.

**B.** **Designation of Johansson as Plaintiff's Expert and Rebuttal Expert.**

4.      On March 29, 2013, Plaintiff served her Designation of Experts (the "Designation") and disclosed the experts' reports.[9]  The Designation identified Johansson as an expert expected to testify that "the alleged seven year old [LVNV] account at issue in this litigation was directly and solely responsible for lowering Plaintiff's credit score approximately 89 points…."[10]  The Designation also states that Johansson will testify on "how FICO scores work" and "educate the jury on FICO and what drives credit scores."[11]  Further, the Designation states Johansson will testify "that the Defendants did not conduct a reasonable investigation into the well detailed and thorough dispute [of the LVNV Account]."[12]  Trans Union deposed Johansson on May 1, 2013.  Johansson's original report totaled 136 pages.[13]

5.      On June 12, 2013, Plaintiff served Plaintiff's Designation of Rebuttal Experts ("Rebuttal Designation") and disclosed the rebuttal experts' reports.  The Rebuttal Designation identified Johansson as a rebuttal expert witness to one of Trans Union's designated experts, John Ulzheimer ("Ulzheimer").[14]  Johansson's rebuttal report related to Ulzheimer is a total of 146 pages.[15]

6.      On June 26, 2013, Plaintiff served Plaintiff's First Amended Designation of Rebuttal Experts ("First Amended Rebuttal Designation") and disclosed additional rebuttal experts' reports.  The First Amended Rebuttal Designation also designated Johansson to rebut the opinions of Trans Union's FCRA expert, Jean Noonan, and Trans Union's mortgage expert,

---

[9]TU App. pp. 434-41, Ex. I.
[10]TU App. pp. 438, Ex. I at p. 5.
[11]TU App. pp. 438, Ex. I at p. 5.
[12]TU App. pp. 438, Ex. I at p. 5. Trans Union also restates its argument in Footnote 1.
[13]*See generally* TU App. pp. 2-137, Ex. A.  Johansson's report is 89 pages and the remaining pages are exhibits to his report.
[14]*See* TU App. pp. 418-24, Ex. G.
[15]*See generally* TU App. pp. 139-284, Ex. B.  Johansson's rebuttal report is 35 pages and the remaining pages are exhibits to the rebuttal report.

Chip Morrow.[16]    Even though Johansson admittedly has no training or experience as an underwriter, he created a report attempting to rebut a Trans Union's mortgage expert's report related to Plaintiff's underwriting report and complete loan file.[17]    Similarly, Johansson admittedly has no experience or training related to the FCRA, reinvestigations, or data furnishing.[18]    Nevertheless, Plaintiff served two more reports created by Johansson, this time totaling fourteen (14) pages.[19]    In sum, Plaintiff served a staggering 296 pages of reports and rebuttal reports created by Johansson.

## III.  ARGUMENT AND AUTHORITIES

### A.    Expert Qualification and Reliability Standards.

7.    This Court should first answer the preliminary question concerning the qualification of Johansson as an expert witness.[20]    If the Court determines Johansson is qualified by knowledge, skill, experience, training, or education, the Court then determines whether the Johansson's opinion is reliable and relevant.[21]    In *Daubert*, the Supreme Court recognized the trial judge's role as a "gatekeeper," ensuring the scientific validity and evidentiary reliability of evidence presented through expert testimony.[22]    The trial judge must "ensure that any and all [expert] testimony or evidence admitted is not only relevant, but reliable."[23]    Whether an expert's opinion should be excluded is left to the discretion of the court.[24]

8.    In order to determine the qualification of a proffered expert, the court must review and analyze the expert's "knowledge, skill, experience, training, or education."[25]    Judges must be sensitive to the qualifications of people claiming to be experts.[26]    The court should carefully

---

[16] *See* TU App. pp. 426-32, Ex. H.

[17] TU App. pp. 367, Ex. E (Johansson Depo. 257:16-23).

[18] TU App. pp. 377, 391-92, Ex. E (Johansson Depo. 282:2-12; 333:3-334:4).

[19] *See generally* TU App. pp. 286-300, Exs. C, D.

[20] *See* Fed. R. Evid. 104(a); *see also Huss v. Gayden*, 571 F.3d 442 (5th Cir. 2009).

[21] *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 590.

[22] *See Daubert*, 509 U.S. at 589.

[23] *Id.* at 590.

[24] *See Sullivan v. Rowan Cos., Inc.*, 952 F.2d 141, 144 (5th Cir. 1992).

[25] Fed. R. Evid. 702.

[26] *See Sullivan*, 952 F.2d at 144.

scrutinize the admissibility of an expert's testimony as part of its "gatekeeper" function and ". . . should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[27] To qualify as an expert, "'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier of fact in his search for the truth.'"[28] Simply put, the issue to be determined is whether the particular expert has "sufficient specialized knowledge" to assist the trier of fact in deciding the particular question at issue.[29]

9. An expert must also meet the qualification standards as stated in Federal Rules of Evidence 702 and 703.[30] Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge <u>will help</u> the trier of fact to understand the evidence or to determine a fact issue;
> (b) the testimony is based on <u>sufficient facts or data</u>;
> (c) the testimony is the product of <u>reliable principles and methods</u>; and
> (d) the expert has <u>reliably applied</u> the principles and methods to the facts of the case.

Fed. R. Evid. 702 (emphasis added). The party offering the expert testimony has the burden of establishing that it is admissible under Rule 702 and the *Daubert-Kuhmo* standard. *See Kumho Tire*, 526 U.S. at 147; *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-460 (5th Cir. 2002). Johansson does not satisfy the foregoing standards, and therefore, should be struck.

---

[27] *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

[28] *Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*, 438 F. Supp. 2d 696, 705 (E.D. Tex. 2006) (quoting *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004)).

[29] *See Kumho Tire*, 526 U.S. at 156; *Sullivan*, 952 F.2d at 144; *Cadle Co. v. Sweet & Brousseau, P.C.*, 2006 U.S. Dist. LEXIS 6862, 16 (N.D. Tex. Feb. 23, 2006).

[30] *See Daubert*, 509 U.S. at 579; *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

**B.     Johansson is Not Qualified to Testify as an Expert.**

        ***i.     Johansson Lacks the Requisite Experience to Testify Regarding FICO's Scoring Methods and Procedure.***

10.     Johansson's experience does not qualify him to testify on the subject of FICO credit scoring.  In fact, Johansson has no experience creating or calculating credit scores using the actual FICO credit scoring algorithm.[31]  Johansson even testifies that "the FICO scoring model is consistent.  It's exact.  It's a computer."[32]  Yet he doesn't have any knowledge of the "exact" FICO scoring model.[33]  Rather, Johansson's entire experience in the credit industry is comprised of his jobs at various credit repair organizations.[34]  Specifically, Johansson has served as the President of Credit Security Group ("CSG"), a credit repair organization, since 2004.[35]  Prior to his position at CSG, Johansson worked for a year-and-a-half at two separate credit repair companies.[36]  Prior to his work at credit repair organizations, Johansson worked at various auto body shops as a painter and estimator.[37]  Johansson's CSG experience and short tenure at two other credit repair companies comprise the complete extent of Johansson's experience in the credit industry.  Despite Johansson's attempts to achieve expert status, a few years working in the credit repair industry does not qualify Johansson to give expert opinions regarding the calculation of FICO credit scores.

11.     The Advisory Committee Notes for Federal Rule of Evidence 702 provide the following guidance regarding the examination of an expert's experience:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. ***The trial court's gatekeeping function requires more than simply "taking the expert's word for it." See Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their

---

[31]TU App. pp. 324-25, 327-28, 332, Ex. E (Johansson Depo. 78:25-79:11, 83:18-84:12, 89:8-16).

[32]TU App. p. 347, Ex. E (Johansson Depo. 192:17-18).

[33]TU App. pp. 324-25, 327-28, 332, Ex. E (Johansson Depo. 78:25-79:11, 83:18-84:12, 89:8-16).

[34]TU App. pp. 314, Ex. E (Johansson Depo. 44:3-25).

[35]TU App. pp. 311, 312, Ex. E (Johansson Depo. 19:11-16; 26:18-20).

[36]TU App. pp. 314, Ex. E (Johansson Depo. 44:3-21).

[37]TU App. pp. 314-15, Ex. E (Johansson Depo. 44:22-45:14).

conclusions and their assurances of reliability. Under *Daubert*, that's not enough.").

Fed. R. Evid. 702 advisory committee notes (2000) (emphasis added). Instead of relying on his training or education related to FICO credit scoring (because it is non-existent), outside sources, or other materials of support, Johansson cites exclusively to his "experience" as the basis for his opinions throughout his 296 pages of reports and rebuttal reports.[38]

12. Johansson testified that his experience alone qualifies him to proffer opinions on FICO credit scoring.[39] Johansson states, "Through years of experience, I have come to know exactly what kind of a credit file would produce a low 600s FICO score or a low 700s FICO score. This is the essence of my expertise."[40] Johansson also claims that he "personally analyze[s] multiple credit reports a day and because of [his] experience [he] can fully 'digest' the dynamics of a consumer's FICO score in a few minutes."[41] However, Johansson does not have any experience in the field of generating FICO credit scores nor does he have any experience or knowledge in the creation of the FICO score algorithm, let alone what the actual FICO score algorithm is. "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[42]

      **ii.**     ***Johansson Lacks the Requisite Education or Training to Testify Regarding FICO's Scoring Methods and Procedure.***

13. Further, Johansson's formal education is unrelated to credit scoring and reporting, and he has had no formal training on how FICO generates these credit scores.[43] Despite the fact that the Consumer Data Industry Association ("CDIA") offers extensive training in FCRA compliance and Metro 2® codes, Johansson has not completed any of this training.[44] Further, both FICO and E-Oscar also offer training and classes, none of which Johansson has

---

[38]*See generally* TU App. pp. 2-300, Exs. A, B, C, D.

[39]TU App. pp. 319, 326, 333, 340, 351, 366, Ex. E (Johansson Depo. 67:2-7;80:1-3; 90:8-24; 155:10-11; 203:6-10; 254:14-23).

[40]TU App. pp. 170, Ex. B at p. 32.

[41]TU App. pp. 11, Ex. A at p. 10.

[42]*Wilson*, 163 F.3d at 937; *see also United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009).

[43]TU App. pp. 307, 317, 332, Ex. E (Johansson Depo. 13:16-25; 54:10-17; 89:8-16).

[44]TU App. pp. 377, Ex. E (Johansson Depo. 282:2-12).

completed.[45]  Lastly, Johansson earned a bachelor's degree from Stephen F. Austin State University in general business and testified that he has not taken any courses related to FICO credit scoring or the credit industry.[46]  Johansson admits that all his knowledge relating to credit scoring and FICO scores has been through self-study and his experience in the credit repair industry.[47]  Thus, Johansson does not have the requisite education or training to qualify as an expert related to FICO's scoring methods or the FICO credit scoring algorithm.

### iii. Johansson Lacks Specialized Knowledge to Testify Regarding FICO's Scoring Methods And Procedure.

14.     Besides Johansson's lack of experience, education, or training, Johansson does not have the type of specialized knowledge required to testify about FICO credit scoring.[48]  In fact, as described in paragraphs 10-13 above, Johansson's experience is devoid of any specialized knowledge regarding the proprietary FICO credit scoring algorithm that is used to create FICO credit scores.  Johansson admits that the FICO credit scoring algorithm is only known by Fair Isaac Corporation, and he does not know the algorithm nor does he know anyone with specific knowledge regarding the algorithm.[49]  Johansson is not certified in FICO credit scoring, has never worked for Fair Isaac Corporation, and has never completed any training or education classes related to FICO credit scoring.[50]

15.     The only basis Johansson provides for qualifying as an expert on FICO credit scores is his review of his CSG clients' credit reports and accompanying FICO credit scores over the past 9 years.[51]  The requisite specialized knowledge necessary to reliably calculate a FICO credit score is knowledge of the FICO credit scoring algorithm and its application and consideration of a particular consumer's accounts and credit report as a whole.  The lack of this

---

[45]TU App. pp. 317, 377, Ex. E (Johansson Depo. 54:10-17, 282:2-12).
[46]TU App. p. 310, Ex. E (Johansson Depo. 16:16-24).
[47]TU App. p. 316, Ex. E (Johansson Depo. 49:1-4).
[48]TU App. p. 319, Ex. E (Johansson Depo. 67:2-7).
[49]TU App. pp. 327, 328, Ex. E (Johansson Depo. 83:22-23; 84:9-12).
[50]TU App. pp. 310, 317, Ex. E (Johansson Depo. 16:16-25, 54:10-17).
[51]TU App. pp. 5, 11, 36, 82-83, 86, 140, 142, 145-50, 156-57, 166-67, Ex. A at pp. 4, 10, 35, 81-82, 85; Ex. B at pp. 2, 4, 7-12, 18-19, 28-29.

specialized knowledge deems Johansson an unqualified expert, thus creating unreliable testimony.

      **iv.**      ***Johansson Is Not Qualified to Testify Regarding Trans Union's Policies And Procedures.***

16.      Johansson is also not qualified to render opinions related to Trans Union's policies and procedures related to creditors providing information and utilizing codes when reporting information. Johansson admits that he has never worked for a CRA.[52] Nor does Johansson hold any degrees of certificates in specialized training related to the matter of credit reporting.[53] Johansson also admits that he has no experience or knowledge regarding the inner workings of Trans Union or Trans Union's policies or procedures in accepting data and compiling a credit report.[54] In fact, Johansson has never reviewed any of Plaintiff's relevant Trans Union credit disclosures or Trans Union's documents or data related to this case to even have the requisite knowledge necessary to form an opinion related to Trans Union's policies and procedures.[55] In short, Trans Union has no knowledge regarding Trans Union's policies and procedures.

17.      Even if Johansson gained limited knowledge regarding the credit industry through his work with a credit repair organization, this knowledge is insufficient to qualify Johansson as an expert regarding Trans Union's policies and procedures. Without any knowledge of Trans Union's policies and procedures, Johansson is merely speculating as he does not have the requisite facts or data to form a sufficiently reliable conclusion. In sum, Johansson does not possess the education, training, knowledge or experience to opine as to the reasonableness of Trans Union's credit reporting procedures and policies. Johansson lacks the requisite knowledge, skill, training, or education to render these opinions. Accordingly, Johansson should be excluded from offering expert opinion testimony regarding these matters at trial.

---

[52] TU App. pp. 341-42, Ex. E (Johansson Depo. 175:24-176:1).

[53] TU App. pp. 306, 307, 308, 309, 310, Ex. E (Johansson Depo. 12:6-16; 13:16-25; 14:15-15:5; 16:1-4; 16:16-25).

[54] TU App. pp. 391-92, Ex. E (Johansson Depo. 333:3-334:19).

[55] TU App. pp. 302-04, 391-92, Ex. E (Johansson Depo. 7:10-9:16; 333:3-334:19).

## C.     An Expert's Opinion Must Be Reliable.

18.     Even if the Court finds that Johansson is qualified to render an expert opinion in this case, which Trans Union denies, his testimony is still not admissible because it is unreliable.[56]   This reliability requirement ensures that expert testimony is "supported by appropriate validation" and "establishes a standard of evidentiary reliability."[57]  When evaluating the reliability of a proffered expert, the Court is required to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue."[58]  The Supreme Court emphasized that the district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[59]Courts must exercise this responsibility in all areas of expert testimony, including expert testimony on non-scientific issues.[60]

19.     Since expert witnesses, unlike ordinary witnesses, are given wide latitude and allowed to offer opinions that are not based upon first-hand knowledge, it is imperative that they have a "reliable basis in the knowledge and experience of their discipline."[61]   In some cases, the source upon which the expert's opinion relies is of such little weight that the jury should not be permitted to receive the opinion.[62]  Such expert opinion testimony should be excluded, as it does not assist the trier of fact in arriving at an intelligent and sound decision.[63] When an expert's testimony is based mainly on personal observations and professional experience, as is the case with Johansson, the court, as the gatekeeper, must probe into the

---

[56]See Fed. R. Evid. 702; *Daubert*, 509 U.S. at 590, 592.

[57]*Daubert*, 509 U.S. at 590.

[58]*Id.* at 593.

[59]*Kumho Tire*, 526 U.S. at 147.

[60]*Kumho Tire*, 527 U.S. 137.

[61]*Daubert*, 509 U.S. at 592.

[62]*See Viterbo v. The Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

[63]*See id.*

reliability of these bases when determining whether the testimony should be admitted.[64] The Court may exclude the testimony of an expert if it lacks adequate foundation or is not based on data "reasonably relied upon by experts in the particular field."[65] Testimony can also be excluded if it is based simply on belief or speculation.[66] Moreover, an expert's opinion's lack of reliable support may render it more prejudicial than probative, making it inadmissible under Federal Rule of Evidence 703.[67] If an expert's opinion is fundamentally unsupported, then it offers no assistance to the jury and should be struck or excluded.[68]

  **i.** ***Johansson's Opinions Relating to the Impact of the LVNV Account on Plaintiff's FICO Credit Scores Are Unreliable Because They Are Based on Speculation and Lack Adequate Foundation.***

20. The information included in a consumer's credit report can be scored using a variety of sophisticated algorithms.[69] The scores at issue in this case are FICO credit scores. The FICO credit scoring model is highly proprietary, and therefore, the algorithm is unknown to non-FICO employees.[70] Indeed, Johansson admits that the FICO credit scoring algorithm is only known by FICO and its employees.[71] Because Johansson does not know the algorithm used to calculate a FICO credit score and relies only on untested, unrecorded, and undocumented alleged patterns he has picked up from reviewing other consumers' credit reports, the foundation for his opinions regarding credit scoring is inherently deficient. As a result, his opinions are fundamentally flawed and based solely on speculation and conjecture.[72]

21. When an expert's opinions are based on speculation and do not adhere to the accepted standards of the expert's alleged area of expertise, as is the case with Johansson's opinions, the court must exclude that expert's unsupported opinions because they fail to provide

---

[64] *See Cadle Co. v. Sweet & Brousseau, P.C.*, 2006 U.S. Dist. LEXIS 6862, 16 (N.D. Tex. Feb. 23, 2006).

[65] *Brown v. Parker-Hannifin Corp.*, 919 F.2d 308, 311 (5th Cir. 1991).

[66] *See Daubert*, 509 U.S. at 590-91.

[67] *See Viterbo*, 826 F.2d at 422.

[68] *See id.*

[69] TU App. pp. 398, Ex. F at ¶ 5.

[70] TU App. pp. 327-28, Ex. E (Johansson Depo. 83:18-84:12).

[71] TU App. pp. 327-28, Ex. E (Johansson Depo. 83:18-84:12).

[72] *See Daubert*, 509 U.S. at 590-91.

any assistance to the jury.[73] Johansson's opinions are based solely on speculation. Johansson cannot properly articulate a reliable basis for his opinion regarding the change in Plaintiff's FICO credit score. Rather, he testifies in generalities and simply cites his experience working at credit repair organizations as the basis for his opinion.[74] For example when discussing the change in Plaintiff's Equifax credit score (even though Equifax has never been a defendant in this lawsuit), Johansson states that "this scoring model still 'feels' and shows the impact of these 'Factoring Company' reportings."[75] With regard to the change in Plaintiff's Trans Union FICO credit score, Johansson claims that the LVNV Account was re-aged and "[t]his re-aging affect was on these FICO scores. This debt WAS re-aged as it applies to FICO scoring … ."[76] Johansson's experience working at credit repair organizations and reviewing "thousands" of credit reports is not a reliable source of information in terms of knowing the exact FICO credit scoring algorithm. Therefore, his opinions are not based on reliable information.[77]

22. Johansson attempts to further bolster his claim that he has the ability to accurately predict FICO credit scores through his use of a software program called Credit Accuracy Technology Enhancement ("CATE").[78] Johansson testified that CATE utilizes "intelligence" he "taught… into [their] software."[79] However, this software does not utilize the FICO credit scoring algorithm or any credit-scoring model at all.[80] In fact, CATE is merely a software program created by Johansson and his uncle, two individuals without any knowledge of the FICO credit scoring algorithm. In addition, CATE is not used, nor has it been tested, by anyone outside of CSG.[81] Further, CATE was never used to analyze or predict Plaintiff's score because CSG never provided any services to Plaintiff.

---

[73] See Viterbo, 826 F.2d at 422.
[74] TU App. pp. 345, 346-47, 364-65, Ex. E (Johansson Depo. 190:4-14; 191:18-192:18; 244:2-245:7).
[75] TU App. pp. 35, Ex. A at p. 34.
[76] TU App. pp. 156, Ex. B at p. 18.
[77] TU App. pp. 343-44, 359-60, 378-80, Ex. E (Johansson Depo. 186:14-187:9; 216:19-217:5; 283:23-285:7).
[78] TU App. pp. 318, 328-29, Ex. E (Johansson Depo. 55:22-25; 84:13-16; 85:16-21).
[79] TU App. pp. 329, Ex. E (Johansson Depo. 85:6-13).
[80] TU App. pp. 322-25, 327-28, Ex. E (Johansson Depo. 76:19-79:11, 83:6-23, 85:2-5).
[81] TU App. pp. 316, Ex. E (Johansson Depo. 49:1-4).

23.     In line with Johansson's voluminous statements and reports proclaiming his opinions, Johansson claims he can accurately predict a FICO credit score, but again offers no support for his claim.  Johansson makes statements such as "Without a deep understanding of FICO Scoring and Credit Reporting to predict the outcome of specific actions over time … we would surely have received BBB complaints" in support of his ability to be a "Credit Expert."[82] Johansson goes on to claim that "In order to be proficient in setting expectations and predicting future scores, I have to have the knowledge and ability through years [sic] experience to hit score goals.  To date, I estimate a 95% plus success rate on such rapid re-scores. Based on the FICO codes, the reported data, and other aspects within a report, my staff and I can determine that by changing X and/or deleting Y, the end FICO score will be Z, or at least Z."[83]  Johansson also claims that he can predict a consumer's FICO credit score within a five or ten point range of accuracy on FICO's 850 point scale.

> Q.     Okay.  Do you believe that there's -- there's a certain range or a number of points that you can accurately predict a FICO score?
>
> A.     Do you mean like if -- if "A" and "B" occur, what will the score end up being?
>
> Q.     I mean, like, do you think you can accurately predict a FICO score within a 10-point range or within a 20-point range?
>
> A.     Like a plus or minus 10-point range?
>
> Q.     Yeah.  Uh-huh.
>
> A.     Oh, yeah, it would be easy.
>
> Q.     What -- what do you think your range is?  I'm sorry.
>
> A.     You know, I would say probably, gosh, at least plus or minus ten points.  Maybe plus or minus five.  It really depends on the credit file and what's going on.  I've been dead-on or I can say, well, it depends.
>
> Q.     Okay.
>
> A.     It really -- it depends on the credit file and what's -- what's changing.
>
> Q.     And what -- what is your basis for being able to so closely accurately predict a FICO score?
>
> A.     Experience and the ranking of the -- most importantly, the ranking of the FICO code and the beginning of the score.[84]

[82]TU App. pp. 83, Ex. A at p. 82.
[83]TU App. pp. 86, Ex. A at p. 85.
[84]TU App. pp. 350-51, Ex. E (Johansson Depo. 202:11-203:10).

As with the rest of Johansson's opinions, his claimed ability to accurately predict FICO credit scores is based on his "experience" and not on his knowledge of the FICO credit scoring algorithm. Simply put, this is not enough to support such a claim.

### ii. *Johansson Cannot Explain His Methodology.*

24.     Johansson's testimony or opinions regarding FICO credit scores and aspects of FICO credit scoring should be excluded because Johansson has not demonstrated a reliable method for such opinions. A prerequisite for making a Rule 702 determination regarding whether an expert's methods are reliable is the court must be assured that the methods are adequately explained.[85]

25.     Johansson only presents his alleged qualifications, conclusions, and assurances of reliability without any explanation of the same. Under *Daubert*, this is not enough.[86] Johansson's methodology regarding his ability to predict LVNV's impact on a FICO credit score within a 5-10 point range of accuracy is not only puzzling but absent any reasonably identifiable basis.[87] Essentially, the substance of Johansson's explanation of his methodology consists of him vouching for his own methodology.[88] Any testimony offered by Johansson relating to FICO credit scores and aspects of FICO credit scoring should be excluded because Johansson does not demonstrate, or even offer, a reliable method. Without a reasonable and detailed explanation of his methodology, the Court cannot affirm the reliability of same.

### iii. *Johansson's Opinions: Are Not Based on Sufficient Data.*

26.     The technical knowledge required to proffer an opinion relating to LVNV's impact on Plaintiff's FICO credit score is somewhat different than the scientific matters

---

[85]*See Daubert*, 509 U.S. at 590; Fed. R. Evid. 702 advisory committee's notes (2000) ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The…expert must explain how the conclusion is so grounded.")
[86]*See Daubert*, 509 U.S. at 590.
[87]TU App. pp. 330-31, 350-51, Ex. E (Johansson Depo. 87:2-88:12, 202:11-203:10).
[88]TU App. pp. 113, 325-26, 330-31, 333-34, 338-39, 340, 345, 347, 351-, 354, 361, 362, 363, 366, 372, 385, 386, Ex. E (Johansson Depo. 37:2-7, 79:22-80:3, 87:22-88:12, 90:8-91:5, 130:21-131:14, 155:7-11, 190:4-9, 192:15-18, 203:6-10, 209:3-15, 224:3-7, 228:12-21, 237:17-22, 254:14-23, 272:20-25, 295:1-6, 296:5-16).

addressed in *Daubert*.[89]  When considering the admissibility of expert testimony relating to scientific matters, the courts do not require absolute certainty from an expert testifying to scientific matters.[90]However, FICO credit scores are not based on widely disputed scientific theories; instead, the calculation of a FICO credit score can be known with a certainty as they are calculated by a definite and precise algorithm.[91]

27.    Because FICO credit scoring involves a calculation certain, an expert offering testimony predicting scores must necessarily have knowledge of this algorithm.[92]  Johansson has no knowledge of the FICO credit scoring algorithm that creates FICO credit scores.[93] Johansson's FICO credit scoring opinions are unreliable because they are not based on the most necessary and sufficient facts and data, the FICO credit scoring algorithm.  Instead, Johansson utilizes unreliable and irrelevant information to form his opinions such as his previous experience reviewing the credit reports of his clients, Wikipedia articles, and three credit reports from re-sellers of credit information.[94]  Johansson even admits that Wikipedia is an unreliable source.[95]  In this case, Johansson has not taken the necessary steps to adequately research and investigate FICO credit scoring nor does he have the knowledge or experience related to the FICO credit scoring algorithm in order to form reliable opinions on same.

### iv.    *Johansson's Opinions Fail to Account for Alternative Explanations.*

28.    To meet reliability requirements, an expert's opinion may also require the expert to reliably rule out reasonable alternative causes for the alleged harm.[96]Johansson's conclusions

---

[89]*See Daubert*, 509 U.S. at 583.

[90]*Daubert*, 509 U.S. at 590 ("Of course, it would be unreasonable to conclude that the subject of scientific testimony must be "known" to a certainty; arguably, there are no certainties in science.").

[91]TU App. pp. 398, Ex. F at ¶ 5; TU App. pp. 347, Ex. E (Johansson Depo. 192:17-18).

[92]*See, e.g. Milward v. Acuity Specialty Prods. Group*, 639 F.3d 11, 18 (1st Cir. 2011) (explaining that the use of scientific judgment is necessary when an algorithm is unavailable).

[93]TU App. pp. 327-28, Ex. E (Johansson Depo. 83:22-23; 84:9-12).

[94]TU App. pp. 341, Ex. E (Johansson Depo. 175:13-17); *see e.g. Viterbo v. The Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (concluding expert opinions were inadmissible because they lacked reliable literature and tests -:as underlying data on which the opinions were based).

[95]TU App. pp. 384, Ex. E (Johansson Depo. 293:3-8).

[96]*See, e.g. Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. Tex. 2000) (explaining that Plaintiff's expert failed to consider other variables such as education and experience as explanation for discrepancy of promotion rates among Hispanic males); Fed. R. Evid. 702 advisory committee notes (2002); *Prepaid Wireless Servs. v. Southwestern Bell Wireless*,

are inherently unreliable because he does not account for alternative explanations for the changes in Plaintiff's FICO score. Plaintiff's credit report was riddled with derogatory accounts, 11 in total.[97] Yet, Johansson continues to assert that he can conclusively tie the entirety of the change in Plaintiff's credit score to one account effectively disregarding the rest of her credit report.[98] However, Johansson admits, as he must do, that both negative and positive accounts have an influence on one's FICO credit score.[99]

29. Further, Johansson disregards the effect of the account in dispute remark ("AID Remark") being removed from multiple accounts on Plaintiff's credit report at one time.[100] When an account bears the AID remark, the derogatory nature of the account is not considered in the FICO credit scoring analysis.[101] Plaintiff disputed multiple accounts in July 2011, thus causing creditors to add the AID remark to six accounts on her Trans Union credit file. As these accounts still bore the AID Remark in October 2011, FICO did not consider them when it generated a credit score of Plaintiff's October 3, 2011 credit report.[102] This resulted in an artificially inflated FICO credit score when compared to the FICO credit score generated on the October 17, 2011 credit report.[103]

30. Johansson also compares the FICO credit scores on Plaintiff's October 17, 2011, report and a November 1, 2011, report, but again fails to compare the reports in their entirety and all data contained in the reports, including all negative and positive accounts.[104] However,

---

*Inc.*, 2002 U.S. Dist. LEXIS 28229, 5 (S.D. Tex. July 23, 2002); *De Luna v. Hidalgo County*, 853 F. Supp. 2d 623, 651 (S.D. Tex. 2012).

[97] Plaintiff's credit report

[98] TU App. pp. 389, Ex. E (Johansson Depo. 324:6-16). Johansson claims that the LVNV Account attributed to **98-99%** of Plaintiff's FICO credit score change.

[99] TU App. pp. 392-95, Ex. E (Johansson Depo. 334:20-337:1).

[100] TU App. pp. 368-69, 389, Ex. E (Johansson Depo. 258:21-259:24; 324:6-16); *see also* TU App. pp. 352-53, Ex. E (Johansson Depo. 207:9-208:5) (Johansson is testifying regarding the LVNV Account).

[101] TU App. pp. 399, Ex. F at ¶8; TU App. pp. 390, Ex. E (Johansson Depo. 329:11-16). Even though, Johansson tries to make a dsitinction that only "open" accounts are taken out of the scoring model, this is inaccurate. Further, Johansson does not understand the meaning of "open" as it is used to designate an account on a credit report. *See infra* ¶¶33-35.

[102] TU App. pp. 399, Ex. F at ¶8.

[103] *Id.*

[104] TU App. pp. 368-69, Ex. E (Johansson Depo. 258:21-259:24).

---

despite these glaring omissions, Johansson continues to conclusively declare that the sole reason for the change in Plaintiff's credit score was the manner of reporting of only one account: the LVNV Account.[105] This cursory dismissal of a valid and probable explanation for Plaintiff's credit score discrepancies causes unreliable opinions.

31. When confronted with the defects in his analysis and reports, Johansson attempts to resuscitate his opinion by introducing new and later in time reports that had never been part of his original analysis.[106] However, his analysis suffers from the same flaws of his failure to consider Plaintiff's credit reports in their entirety while focusing on the LVNV Account with the same tunnel vision present in his original Expert Report and during his deposition.

32. Johansson uses these later in time reports (one dated April 6, 2012 and one dated June 4, 2012) to draw yet another irrelevant and incomplete comparison. First, Trans Union removed the LVNV Account and another derogatory account from Plaintiff's Trans Union report on February 3, 2012; therefore, two derogatory accounts were not on her credit report at the time of the April 6, 2012 report.[107] Second, by June 4, 2012, even more accounts had been deleted due to the age of the accounts leaving only five derogatory accounts on her report.[108] Further, there were changes to some of Plaintiff's positive accounts in ways that impact the credit score, such as the reduction of balances on installment and mortgage accounts, deletion of accounts, and the complete pay off of revolving accounts.[109] Without considering these alternative or additional causes for changes in her credit score, Johansson continues to claim that the sole reason for any change in plaintiff's FICO credit score can be pinned on the LVNV Account.

---

[105]TU App. pp. 390, Ex. E (Johansson Depo. 329:11-20).-
[106]*See generally* TU App. pp. 139-284, Ex. B.
[107] *See* TU App. pp. 265-66, Ex. B at Ex. F; *see also* TU App. 451-53, Ex. K (Toliver Depo. 228:18-230:18)..
[108]*See* TU App. pp. 279-80, Ex. B at Ex. F.
[109]*Cf* TU App. pp. 258-84, Ex. B at Ex. F. (Exhibit F to Johansson's Rebuttal Report contains both Plaintiff's April 6, 2012 credit report and June 4, 2012 credit report).

33.    The Consumer Data Industry Association ("CDIA") is a credit industry trade organization that establishes standards for the consumer reporting industry.[110]   The CDIA publishes these standards yearly in the Credit Reporting Resource Guide ("CRRG").[111]   The CRRG is a uniform guide that instructs all furnishers of information how to report accounts to the CRAs.[112]   All furnishers of information and CRAs utilize the CRRG to ensure consistency and accuracy in the reporting of accounts.[113]   CRRG defines account/portfolio type "O" or "Open" as:

> Accounts where the entire balance is due upon demand or that have one payment due as scheduled (i.e., Terms Duration = 001).  This Portfolio Type is used by credit card reporters when the full balance amount is due each month (i.e., no revolving terms).  This Portfolio Type is also used by Collection Agencies, Child Support Agencies, **Debt Buyers**, Student Loan Guarantors, the U.S. Department of Education (as guarantor) and Utility Services' payment plans.[114]

34.    Johansson's opinion regarding the account type coding of the LVNV Account directly conflicts with the provided definition in the CRRG, the generally accepted standards in the industry.  While "general acceptance" is not a prerequisite to admissibility, it is one factor a trial court must consider as part of its "gatekeeping" function.[115]   Johansson testifies that Trans Union incorrectly reported the LVNV Account Type as "O" or "open."[116]   Johansson incorrectly defines an account utilizing the account type "open" as an account a consumer has with an original lender.[117]   Johansson testifies that an account that has been charged-off can never be an "open account."[118]   Johansson further bolsters his flawed opinion regarding account/portfolio

---

[110]TU App. pp. 398-99, Ex. F at ¶6.

[111]TU App. pp. 398-99, Ex. F at ¶6.

[112]TU App. pp. 398-99, Ex. F at ¶6.

[113]TU App. pp. 398-99, Ex. F at ¶6.

[114]TU App. pp. 399, 415, Ex. F at ¶7, Ex. F3 (emphasis added).

[115]*See Daubert*, 509 U.S. at 594 ("Widespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique which has been able to attract only minimal support within the community,' may properly be viewed with skepticism.") (quoting *United States v. Downing*, 753 F.2d 1224, 1238 (3d Cir. 1985)).

[116]TU App. pp. 321, Ex. E (Johansson Depo. 74:8-12).

[117]TU App. pp. 355, Ex. E (Johansson Depo. 211:8-20); TU App. pp. 71-72, Ex. A at pp. 70-71.

[118]TU App. pp. 355, Ex. E (Johansson Depo. 211:24-212:8).

type in his expert report and rebuttal reports that have been disclosed in this case.  For example, he incorrectly asserts that FICO uses the normal business and accounting meanings of the code to designate the account with a portfolio type of "open."[119]  Never mind the fact that Johansson has not even attempted to present himself as an expert on business and generally accepted accounting principles.  This is curious as his rebuttal report references generally accepted accounting principles on nine different occasions.[120]  Even more curious is the fact that prior to his rebuttal report, Johansson never once opined or asserted that FICO relied on or considered accounts based on the text listed in a consumer report or that FICO used business or accounting meanings of the text in a consumer report.

35.     In fact, Johansson appears to deliberately ignore the CRRG definition and meaning of "open" when used in the context of a portfolio type.  This definition does not include any language related to original lender, as included in Johansson's definition.  Further, the legal definition of "open" in terms of an account is an "account that has not yet been settled or paid … a series of transactions that give rise to credits and debits, but that results in a single liability."[121]  Johansson's definition of "open" is entirely inconsistent with the CRRG definition and the industry's accepted meaning of these terms.[122]  Further, beyond citing to his "experience," Johansson does not identify the source of his understanding of this definition; thus his opinion related to the LVNV's use of account type "O" is unreliable and should be excluded.

> **vi.**     ***Johansson's Opinion that LVNV Inaccurately Used Loan Type "0C" is Unreliable because it Lacks Adequate Foundation.***

36.     Johansson offers additional factually unsupported opinions when opining that Trans Union incorrectly reported the Loan Type with regard to the LVNV Account.  Even though Johansson offers opinions related to the Loan Type reported on the LVNV Account, he is without knowledge regarding relevant facts necessary to form those opinions.  LVNV reported

---

[119] TU App. pp. 139, 142, 144, Ex. B at pp. 1, 4, 6.
[120] TU App. pp. 139, 141, 147, 148, 149, 153, Ex. B at pp. 1, 3, 9, 10, 11, 15.
[121] BARRON'S LAW DICTIONARY 326 (2d ed. 1984).
[122] TU App. pp. 355-56, 370-71, Ex. E (Johansson Depo. 211:8-212:8, 270:13-271:1).

the LVNV Account with the account type "0C (zero-C)."[123]  Code "0C" is used to report both debt buyer and factoring company accounts.[124]  Johansson contends that LVNV is incorrectly being reported with the "0C" designation when he has no knowledge of LVNV's procurement of the LVNV Account.[125]  Further, Johansson refuses to acknowledge that the code "0C" includes both debt buyer accounts and factoring company account.[126]  Instead, he insists on debating whether LVNV is a factoring company without regard to the possibility that LVNV is a debt buyer.  When in fact, LVNV was the owner of the LVNV Account.[127]  Indeed, Johansson bases his understanding of a Factoring Company from Wikipedia and hearsay, neither of which constitute data regularly relied on or accepted in the credit reporting industry.[128]

37.    Similarly, Johansson's understanding and application of a "Factoring Company" in terms of generating a FICO credit score is fundamentally flawed and without basis or foundation.  Without any factual basis for saying so, Johansson opines that reporting the LVNV Account as a Factoring Company account caused the LVNV Account to be treated as more recent in time than a Debt Purchaser.[129]  In his rebuttal report, Johansson admits that he doesn't even know if LVNV used the code "0C" in its reporting of the LVNV Account.[130]  This only highlights Johansson's failure to review and analyze highly relevant documents in this case such as the documents produced by LVNV that conclusively show that LVNV reported the LVNV Account with the code "0C."[131]  As noted earlier, he also doesn't know the FICO scoring model algorithm, and without this knowledge, he cannot conclusively say how any account type is considered or scored differently by FICO.

---

[123]TU App. pp. 443-49, Ex. J, J1.
[124]TU App. pp. 399, 402-407, 412-13, Ex. F at ¶7, Exs. F1, F3.
[125]TU App. pp. 357-58, Ex. E (Johansson Depo. 214:21-215:19).
[126]TU App. pp. 381-83, 387-88, Ex. E (Johansson Depo. 287:9-289:10; 317:18-318:2).
[127]TU App. pp. 335, Ex. E (Johansson Depo. 100:1-4).
[128]TU App. pp. 359-60, Ex. E (Johansson Depo. 216:2-217:5).
[129]TU App. pp. 320, 359, Ex. E (Johansson Depo. 73:21-24; 216:2-18).
[130]TU App. pp. 142-43, Ex. B at pp. 4-5.
[131]TU App. pp. 443-49, Ex. J, J1.

38.     Additionally, Johansson has confused his own opinion – in his original report, he opined that it was the use of the code "0C" that was detrimentally impacting Plaintiff's FICO credit score.[132]   Now, in Johansson's rebuttal report, he opines that it is the text "Factoring Company Account" that FICO is relying on and causing an unfair impact in Plaintiff's FICO credit score.[133]   Johansson has stated two vastly different opinions about what information FICO relies on when generating a FICO credit score.   He has failed to set forth a clear opinion on the effect of the use of the code "0C" simply because he doesn't have the requisite foundation to make such an opinion.

39.     Johansson further testified during his deposition that a Factoring Company and Debt Purchaser are different categories of accounts and have different meanings.[134]   Again, Johansson completely ignores the fact that the CRRG uses the terms "Factoring Company" and "Debt Buyer" synonymously.[135]   As detailed *supra*, Johansson has no experience working for a CRA nor has he completed any training offered by the CDIA or FICO.   Further, Johansson, did not even review the CRRG when creating his reports nor has he ever received any training on using the CRRG.[136]   The information and understandings that Johansson bases his opinions regarding the reporting of the loan type associated with the LVNV Account are contrary to generally-accepted meanings in the credit industry, and therefore, unreliable.

   **vii.     *Johansson's Opinions Relating To Additional "Hidden Data" on Trans Union Credit Reports are Unreliable Because They Lack Foundation.***

40.     Finally, Johansson concludes that Trans Union includes "hidden data" on consumer's accounts that consumers are not allowed to view.[137]   Johansson contends this "hidden data" includes a field which reflects an account's date "major delinquency first reported," which is restricted from a consumer's view, but is visible for FICO credit scoring

---

[132]TU App. pp. 59, 79, 80, Ex. A at pp. 58, 78, 79.
[133]TU App. pp. 139, Ex. B at pp. 1.
[134]TU App. pp. 358-60, Ex. E (Johansson Depo. 215:11-217:5); TU App. p. 15, Ex. A at p. 14.
[135]TU App. pp. 399, 412-13, Ex. F at ¶7, F3.
[136]TU App. pp. 348-49, Ex. E (Johansson Depo. 200:14-201:3).
[137]TU App. pp. 336, Ex. E (Johansson Depo. 104:7-20).

purposes.[138] Recall that Johansson has never reviewed a Trans Union report related to Plaintiff or any of Trans Union's procedures and policies that have been produced in this case. Johansson admits that he has never actually seen "hidden data" on a Trans Union report, but instead, bases his assumption on an unidentified report and a prior deposition of an Experian representative in an unrelated lawsuit.[139] Specifically, Johansson testifies as follows:

**Q.** **What do you mean by "hidden data"?**
A. The reporting agencies have data on accounts that consumers don't – aren't allowed to see.

**Q.** **And how do you know about this hidden data?**
A. I've seen it before in HTML reports to where you can get – you can see bureau data like this in an HTML format, which is coded. I've seen a data field like payment pattern start date.

And through the – a deposition with Experian on a different case, they talked about data field similar to this 8 of '11 date that is not shown on an Experian consumer report.

**Q.** **But what about Trans Union?**
        Mr. McCarty: Objection; form
**Q.** **Do you have any specific knowledge with respect to Trans Union?**
A. Not yet.[140]
…

**Q.** **Have you ever seen it [the date of major delinquency first reported] on a Trans Union credit report?**
A. No.
        ---
**Q.** **Have you ever looked at Trans Union's underlying data?**
A. No.[141]
…

**Q.** **Okay, But you just testified, correct, that you didn't review a Trans Union report around the same time to see if there was an 8/11 date anywhere reporting. Correct?**

A. I did not re-- -- correct, I did not review a Trans Union specific report.[142]

---

[138]TU App. pp. 374, Ex. E (Johansson Depo. 274:15-21).
[139]TU App. pp. 337, Ex. E (Johansson Depo. 105:5-9).
[140]TU App. pp. 336-37, Ex. E (Johansson Depo. 104:21-105:9).
[141]TU App. pp. 373, Ex. E (Johansson Depo. 273:7-9; 273:13-15).
[142]TU App. pp. 375-76, Ex. E (Johansson Depo. 278:21-279:1).

41.    Johansson's "hidden data" theory, which he believes attributed to the decrease in Plaintiff's FICO credit scores, is conjecture and unsupported by any identifiable facts. Again, Johansson's unaccepted and self-created definitions coupled with a lack of foundation or identification of authority cause Johansson's opinions to be inherently unreliable.

**D.    Johansson's Opinions Will Not Aid the Jury in Their Determination.**

42.    Johansson's opinions will not aid the jury in deciding the particular question at issue for the reasons stated in this Motion. In sum, Johansson's conclusions are conclusory and mere speculation with no foundation or basis in any reliable or accepted methodology. Johansson has no personal or specialized knowledge of the FICO credit scoring algorithm. Johansson does not offer or analyze any information that will not be presented to the jury in other means at trial. Johansson's opinions are no more specialized than any layperson's understanding of the general effects an adverse account can have on a consumer's credit score. Further, the extraordinary amount of misinterpretations, willful ignorance, and contradictions to generally-accepted practices and industry definitions used in the credit reporting industry necessarily create unreliable opinions that will only serve to confuse the jury.

**E.    Johansson Should Also Be Excluded Because He Failed To Comply With The Federal Rules of Civil Procedure.**

43.    Johansson has been retained by Plaintiff to provide expert testimony in this case. However, Johansson has failed to comply with Rule 26(a)(2)(B)(i) and 26(a)(2)(B)(iv) of the Federal Rules of Civil Procedure. Specifically, Johansson's report did not include his qualifications or a Curriculum Vitae. Johansson does not even provide the most basic qualifications such as his education. Further, Johansson testified that he has provided everything he has and that he has no ability to provide a list of his publications from the last ten years as is required by Rule 26.[143] Therefore, Johansson should be excluded for failing to comply with the Rule 26 of the Federal Rules of Civil Procedure.

---

[143]TU App. pp. 304-05, Ex. E (Johansson Depo. 9:17-10:14).

# IV. CONCLUSION

44.      Johansson does not qualify as an expert and his opinions are unreliable. Johansson's testimony is not based on sufficient facts or data, nor is it the product of reliable principles and methods.  Importantly, Johansson has no knowledge or experience of the FICO credit scoring algorithm, which is the crux of Plaintiff's lawsuit.  Further, Johansson's testimony is not meant to assist the trier of fact to understand the evidence or determine a fact at issue. Rather it is an attempt to improperly testify to Plaintiff's allegations.  For these reasons, Johansson's testimony and opinions should be excluded.

WHEREFORE, Defendant Trans Union LLC respectfully requests that its Motion to Strike Plaintiff's Expert Edwin Johansson be granted and that Plaintiff be precluded from soliciting the testimony of Edwin Johansson at the trial of this cause.

DATED this 9th day of July, 2013.

Respectfully submitted,

*/s/ Ginny E. Webb*
_____
**GINNY E. WEBB**
Texas Bar No. 24047462
Southern District Bar No. 1111061
ginny.webb@strasburger.com
(469) 287-3907
(469) 227-6581 Fax
**PAUL L. MYERS**
Texas Bar No. 14765100
Southern District Bar No. 11228
**ALLISON A. REDDOCH**
Texas Bar #24076912
Southern District of Texas Bar No. 1383222
**STRASBURGER & PRICE, LLP**
2801 Network Boulevard, Suite 600
Frisco, TX 75034
Counsel for Defendant Trans Union LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of July, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Dennis McCarty
dmccartylaw@att.net
McCarty Law Firm
P O Box 54172
Hurst, TX 76054
(940) 567-3141
*Counsel for Plaintiff*

Raymond Arthur Hafner , IV
rahafner@jonesday.com
Jones Day
717 Texas, Ste 3300
Houston, TX 77002
(713) 702-0994
*Counsel for Experian*

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: None.

*/s/ Ginny E. Webb*
_____
**GINNY E. WEBB**

## CERTIFICATE OF CONFERENCE

Attorney for Movant conferred with attorney for Plaintiff on Monday, July 8, 2013, and he stated that he is opposed to this Motion to Strike Plaintiff's Expert Edwin Johansson.

*/s/ Ginny E. Webb*
_____
**GINNY E. WEBB**