IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DENESE TOLIVER, §
                              §
            Plaintiff,        §
                              §
v.                            §        CIVIL ACTION NO. H-12-2436
                              §
EXPERIAN INFORMATION SOLUTIONS, §
INC.,                         §
                              §
            Defendant.        §

## MEMORANDUM OPINION AND ORDER

Toliver filed suit on August 14, 2012, against Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union") alleging violations of the Fair Credit Reporting Act ("FCRA"), and against LVNV Funding, LLC ("LVNV") alleging violations of the FCRA and the Fair Debt Collection Practices Act ("FDCPA"). Her claims arise from a failure to secure a mortgage allegedly resulting from inaccuracies in her credit report that caused her credit score to drop below the minimum required by the mortgage provider. Pending before the court is Defendant Experian's Motion for Summary Judgment and Brief in Support (Docket Entry No. 41) on Toliver's claims under §§ 1681e(b) and 1681i(a) of the FCRA. For the reasons discussed below, Experian's Motion for Summary Judgment will be granted in part and denied in part.

## I.   **Factual and Procedural Background**

Toliver opened a Sears credit card in October of 1993.[1] Between 2003 and 2005 she experienced financial difficulties.[2] In late 2005 Toliver became delinquent on her Sears card account and eventually defaulted.[3] Sears charged off the account in March of 2006.[4]

Sears sold the defaulted debt to LVNV in March of 2006.[5] LVNV began reporting the account to Experian.[6] LVNV reported the debt using the Metro 2 Format ("Metro 2") developed by the Consumer Data Industry Association ("CDIA") and published in the CDIA's Credit

---

[1]Complaint, Docket Entry No. 1, p. 20 ¶ 45; Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Defendant Experian's Motion for Summary Judgment and Brief in Support ("Experian's Motion for Summary Judgment"), Docket Entry No. 41, p. 7, Docket Entry No. 43.

[2]Toliver Deposition Excerpts ("Toliver Deposition"), Exhibit F to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 64:18-65:8, Docket Entry No. 44.

[3]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Defendant's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43.

[4]Id.

[5]Declaration of Tonya Henderson of LVNV Funding, LLC ("Henderson Declaration"), Exhibit E to Defendant's Motion for Summary Judgment, Docket Entry No. 41, p. 2 ¶ 4, Docket Entry No. 42.

[6]Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7; Plaintiff's Response and Brief in Opposition to Defendant's Experian's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 66, p. 10.

Reporting Resource Guide.[7]   LVNV used the Metro 2 codes "0C" and "O" to report the account to Experian.[8]

In July of 2011 Toliver disputed several accounts that appeared on her credit report, including the LVNV account.[9] Experian responded to these disputes by sending Automated Consumer Dispute Verifications (ACDVs) to the creditors reporting each of the disputed accounts.[10] As a result, several accounts on Toliver's Experian credit report contained a notation that they had been disputed by the consumer.[11]   LVNV responded to the ACDV on August 16, 2011.[12]   In its response, LVNV confirmed the nature of

---

[7]Henderson Declaration, Exhibit E to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 2 ¶¶ 8-9, Docket Entry No. 42; Rebuttal Report by Kimberly Hughes to Evan Hendricks' and Edwin Johansson's Expert Reports in the Matter of Toliver v. Experian Information Solutions, Inc. ("Hughes Report"), Exhibit L to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 4, Docket Entry No. 42; Affidavit in Support of Objection to Summary Judgment in matter of Toliver vs. Experian Information Solutions, LLC ("Johansson Affidavit"), Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 3.

[8]Henderson Declaration, Exhibit E to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 2 ¶¶ 8-9, Docket Entry No. 42.

[9]Declaration of Teresa Iwanski ("Iwanski Declaration"), Exhibit A to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 5 ¶ 14, Docket Entry No. 42.

[10]Id.; Experian ACDVs, Exhibit B to Experian's Motion for Summary Judgment, Docket Entry No. 41, Docket Entry No. 43; Plaintiff's Response, Docket Entry No. 66, p. 9.

[11]Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 5-12, Docket Entry No. 43.

[12]Experian ACDVs, Exhibit B to Experian's Motion for Summary Judgment, Docket Entry No. 41, Docket Entry No. 43

the debt, updated the balance amount and date, and added a notation of Toliver's dispute.[13]

In the fall of 2011 Toliver sought a mortgage to purchase a home from K. Hovnanian American Mortgage ("K. Hovnanian").[14]  After an initial review she was told that she would likely be approved, but that she could not close until the dispute notations were removed from her credit report.[15]  When the dispute notations were removed, however, Toliver's credit score declined significantly.[16] As a result of this decline, K. Hovnanian informed Toliver that she would likely not be approved for the loan, and she withdrew her application.[17]

In October of 2011 Toliver's attorney called LVNV, and LVNV placed the dispute notation for the LVNV account back on her credit report.[18]  When the dispute notation was added back, her credit score increased significantly.[19]

_____

[13]Id.

[14]Affidavit of Denese Toliver ("Toliver Affidavit"), Exhibit I to Plaintiff's Response, Docket Entry No. 66, p. 2 ¶ 2.

[15]Id.

[16]Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 5-6; Toliver Affidavit, Exhibit I to Plaintiff's Response, Docket Entry No. 66, p. 2 ¶ 2.

[17]Toliver Affidavit, Exhibit I to Plaintiff's Response, Docket Entry No. 66, p. 2 ¶ 2.

[18]Dec. 2, 2011, letter of representation or official dispute to Experian from Toliver's attorney, Dennis McCarty ("Official Dispute"), Exhibit H to Plaintiff's Response, Docket Entry No. 66.

[19]Id.

In December of 2011 Toliver, through her attorney, sent a letter to Experian disputing the way that the LVNV account was reported on her credit report.[20]  In the letter Toliver disputed LVNV's use of the Metro 2 codes "0C" and "O" to describe the account as well as several of the dates included in the report.[21]  Experian responded by letter on December 20 and sent an ACDV to LVNV on December 21, describing the basis of Toliver's dispute.[22]  LVNV confirmed the nature of the debt by responding with the same Metro 2 codes that it had previously used, updated the balance amount and date, and added a notation of Toliver's dispute.[23]

In May of 2012 Toliver, through her attorney, contacted Experian to dispute the LVNV account and the defaulted Sears account.[24]  Because both accounts were scheduled to be deleted from Toliver's credit report less than a month later, in June of 2012,

---

[20]Id.

[21]Id.

[22]Iwanski Declaration, Exhibit A to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 6 ¶ 19, Docket Entry No. 42; Experian ACDV, Exhibit B to Experian's Motion for Summary Judgment, Docket Entry No. 41, Docket Entry No. 43.

[23]Iwanski Declaration, Exhibit A to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7 ¶ 20, Docket Entry No. 42; Experian ACDVs, Exhibit B to Experian's Motion for Summary Judgment, Docket Entry No. 41, Docket Entry No. 43.

[24]Iwanski Declaration, Exhibit A to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7 ¶ 22, Docket Entry No. 42.

Experian decided to delete both accounts from her credit file.[25]
Experian mailed these results to Toliver on May 14, 2012.[26]

Toliver filed suit on August 14, 2012, against Experian and
Trans Union alleging violations of §§ 1681e(b) and 1681i(a) of the
FCRA, and against LVNV alleging violations of § 1681s-2(b) of the
FCRA and several sections of the FDCPA.  Pending before the court
is Experian's Motion for Summary Judgment on Toliver's claims under
§§ 1681e(b) and 1681i(a) of the FCRA.

## II.  __Standard of Review__

Summary judgment is authorized if the movant establishes that
there is no genuine dispute about any material fact, and the law
entitles it to judgment.  Fed. R. Civ. P. 56(a).  Disputes about
material facts are genuine "if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party."
Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510 (1986).  The
moving party is entitled to judgment as a matter of law if "the
nonmoving party has failed to make a sufficient showing on an
essential element of her case with respect to which she has the
burden of proof."  Celotex Corp. v. Cattrett, 106 S. Ct. 2548, 2552
(1986).

A party moving for summary judgment "must 'demonstrate the
absence of a genuine issue of material fact,' but need not *negate*

---

[25]Id.

[26]Id.

the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 106 S. Ct. at 2553).  "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id.  If, however, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S. Ct. at 2553-54).  The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

## III.  The Fair Credit Reporting Act

The purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . information in a manner which is fair and equitable to the consumer, with regard to the

confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). "The Act defines a complex set of rights and obligations that attend the relationships among and between the provider of a credit report, the user of that information and the consumer who is made the subject of such a report." Sepulvado v. CSC Credit Servs., Inc., 158 F.3d 890 (5th Cir. 1998). Among the obligations that the FCRA imposes is the requirement that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). In addition, "if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer . . . the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a).

Under the FCRA a consumer reporting agency ("CRA") is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(e). Section 1681o of the FCRA creates a private right of action for negligent

violations of the Act, while § 1681n provides a similar remedy for willful violations. "The FCRA is to be liberally construed in favor of the consumer." <u>Wagner v. TRW, Inc.</u>, No. 97-30601, 1998 WL 127812, at *1 (5th Cir. Mar. 4, 1998) (per curiam) (citing <u>Guimond v. Trans Union Credit Info. Co.</u>, 45 F.3d 1329, 1333 (9th Cir. 1995)).

## IV.   <u>Toliver's Claims Under § 1681e(b)</u>

Section 1681e(b) of the FCRA provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." <u>Sepulvado</u>, 158 F.3d at 896. "Section 1681e(b) does not impose strict liability for any inaccurate credit report, but only a duty of reasonable care in preparation of the report." <u>Thompson v. San Antonio Retail Merchs. Ass'n</u>, 682 F.2d 509, 513 (5th Cir. 1982). "[T]he plaintiff must show that the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared." <u>Sepulvado</u>, 158 F.3d at 896. "The standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably

prudent person would do under the circumstances." <u>Thompson</u>, 682 F.2d at 513.

In her complaint, Toliver alleges that Experian violated § 1681e(b) by "not following reasonable procedures to assure maximum possible accuracy."[27]  She asserts that a delinquent Sears credit account purchased by LVNV had a disproportionate negative impact on her credit score due to alleged inaccuracies in her Experian credit report.[28]  Toliver asserts that those alleged inaccuracies caused the FICO[29] credit scoring model to give the LVNV account undue weight, significantly impacting her credit score.[30] Toliver identifies three alleged inaccuracies in her credit report: (1) use of the Metro 2 code "0C" to indicate that LVNV was a "factoring company" rather than a debt collector; (2) use of the Metro 2 code "O" to indicate that the LVNV account was "open" rather than "charged off"; (3) "[a]llow[ing] a six year old debt [to] look like a new and recent delinquency as well as looking like it is being reported by an original lender."[31]  Each of Toliver's allegations is addressed below.

_____

[27]Complaint, Docket Entry No. 1, p. 15 ¶ 42.

[28]<u>Id.</u> at 15-17 ¶ 42.

[29]FICO is the brand name of Fair Isaac Corporation, formerly Fair, Isaac and Company, Inc.  The FICO credit scoring model is the most commonly used model throughout the credit industry.  <u>See</u> Hughes Report, Exhibit L to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 42.

[30]Complaint, Docket Entry No. 1, pp. 15-17 ¶ 42.

[31]<u>Id.</u>

**A.    Use of the Metro 2 Code "0C" to Classify LVNV Was Accurate**

Toliver argues that use of the Metro 2 code "0C" to classify LVNV was inaccurate.[32]  She asserts that had LVNV been classified on her credit report as a debt collector the LVNV account would have affected her credit score much less than it allegedly did.[33] She argues that because LVNV purchased her debt after it was in default, LVNV was a "debt collector" under the FDCPA.  15 U.S.C. § 1692a(6).  Accordingly, Toliver argues that the LVNV account should have been reported with a code that reflected LVNV's status as a debt collector under § 1692a(6).[34]

In its Motion for Summary Judgment, Experian advances four reasons why it is entitled to judgment as a matter of law on Toliver's § 1681e(b) claim for use of the Metro 2 code "0C" to classify LVNV:    (1) the Metro 2 code "0C" was accurate;  (2) Experian followed reasonable procedures to assure maximum possible accuracy; (3) Toliver has not produced any evidence that use of the "0C" code caused her any damages; and (4) Toliver has not produced

---

[32] Id.

[33] Id.  Toliver asserts that the LVNV account impacted her credit score by eighty-nine points.  Id.  However, as Toliver's expert points out, that figure represents the difference between the Trans Union credit score on October 17, 2011, and the Trans Union credit score on November 1, 2011.  Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 6.  A credit score was never prepared using data from Experian on November 1, 2011.  Id.  A credit score was prepared using data from Experian on April 6, 2012.  Id. at 7.  The difference between the credit scores prepared on October 17, 2011, and April 4, 2012, using Experian data is forty-five points.  See id. at 6-7.

[34] Complaint, Docket Entry No. 1, p. 15 ¶ 42.

any evidence that Experian acted willfully, which is required if Toliver is to recover any punitive damages from Experian.[35]  Because Experian's use of the "0C" code was accurate, it is unnecessary to address Experian's other arguments for summary judgment.

In order to establish a prima facie case under § 1681e(b), a consumer must produce some evidence of an inaccuracy in her credit report.  See Washington v. CSC Credit Servs., Inc., 199 F.3d 263, 267 n.3 (5th Cir. 2000) (listing cases holding that inaccuracy is an essential element of a prima facie case under § 1681e(b)); see also Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 n.9 (11th Cir. 1991) ("[T]he burden of proving that a particular report is inaccurate is part of the plaintiff's case and not an affirmative defense for a defendant credit reporting agency.").  "A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  Sepulvado, 158 F.3d at 896 (5th Cir. 1998).  Mere imprecision does not render information inaccurate.  See Wagner, 1998 WL 127812, at *1 (construing the holding in Pinner v. Schmidt, 805 F.2d 1258 (5th Cir. 1986), on the distinction between accuracy and "maximum possible accuracy").  However, information that is "open to an interpretation that is directly contradictory to the true

---

[35]Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 5-6.

-12-

information" is sufficiently misleading to qualify as inaccurate. Id.; see also Pinner, 805 F.2d at 1262-63.

In upholding a grant of summary judgment for the defendant CRA, the Fifth Circuit in Wagner held that a credit report entry stating that the plaintiff had "5 or more" late payments on an account was not inaccurate when the consumer had in fact been late with payment "6 times." Wagner, 1998 WL 127812, at *1. The court rejected the plaintiff's argument that the "use of 'or more' was unreasonably ambiguous because it could mean that [the plaintiff] was late 6, 10, or 100 times." Id. Distinguishing its earlier holding in Pinner, the court noted that "the 'or more' notation, although imprecise, is neither inaccurate nor open to an interpretation that is directly contradictory to the true information." Id. In Pinner the Fifth Circuit held that the notation "Litigation Pending" in the plaintiff's credit file was ambiguous because "any person could easily have construed the notation 'Litigation Pending' as an indication that the plaintiff was being sued by [the creditor], while the actual situation was the reverse." Pinner, 805 F.2d at 1262.

It is undisputed that at all times pertinent to this litigation the Metro 2 code "0C" was used to classify the LVNV account on Toliver's credit report.[36] Toliver asserts that use of

---

[36]Complaint, Docket Entry No. 1, p. 15 ¶ 42; Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7; Plaintiff's Response, Docket Entry No. 66, p. 14.

the "OC" code makes it appear as though LVNV is a "factoring company" rather than a debt collector.[37] However, "OC" is a code, and its meaning is defined by its developers.

The Metro 2 code was developed by the CDIA, and detailed information about the code is available in the CDIA's Credit Reporting Resource Guide ("CRRG").[38] According to the CRRG, the Metro 2 code "OC" is used to designate a particular creditor as a "Debt Buyer."[39] The term "Debt Buyer" is defined in the CRRG's glossary to mean "[a] company or individual who purchases accounts (generally non-performing debts) with the intent of collecting debts owed."[40] The glossary entry for "factoring company" simply states "See Debt Buyer."[41] Thus, it is clear that the "OC" code is meant to include all debt buyers, whether they are factoring companies or debt purchasers who might otherwise be classified as debt collectors under 15 U.S.C. § 1692. The CDIA considers all

---

[37]Plaintiff's Response, Docket Entry No. 66, p. 18.

[38]Hughes Report, Exhibit L to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 4, Docket Entry No. 42; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 3.

[39]Excerpt of CRRG, Exhibit J to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 10-3, Docket Entry No. 42.

[40]Glossary of Terms, Exhibit C3 to Trans Union LLC's Motion for Summary Judgment, Docket Entry No. 38, p. 7-2; see also Excerpt of CRRG, Exhibit J to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 10-1, Docket Entry No. 42 (repeating the definition of "debt buyer" as presented in the CRRG's glossary).

[41]CRRG Glossary, Exhibit I to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7-3, Docket Entry No. 42.

factoring companies to be debt buyers, but not all debt buyers to be factoring companies.

Experian characterizes factoring companies as "specialized debt buyer[s] generally focusing on the purchase of accounts receivable."[42] Although Toliver has produced copious evidence as to the business practices of factoring companies, she does not appear to contest this characterization.[43] Instead, Toliver argues that certain debt buyers who also qualify as debt collectors under § 1692 must be separated from other debt buyers and categorized differently, lest the debt collector be permitted to "masquerade as a factoring company."[44] But § 1681e(b) imposes no such requirement.

The evidence produced by both parties establishes conclusively that LVNV is "[a] company . . . who purchases accounts (generally non-performing debts) with the intent of collecting debts owed"—the very definition of the "0C" code.[45] While the code, defined broadly

-------------------------

[42]Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7 n.2.

[43]Affidavit to the Court in the Matter of Toliver vs. Experian Information Solutions, Inc. ("Wilson Affidavit"), Exhibit C to Plaintiff's Response, Docket Entry No. 66, pp. 3-7.

[44]Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 3.

[45]Henderson Declaration, Exhibit E to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 2 ¶¶ 4-9, Docket Entry No. 42; Excerpt of CRRG, Exhibit J to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 10-1, Docket Entry No. 42; LVNV Screen Shot, June 8, 2013, Exhibit K to Experian's Motion for Summary Judgment, Docket Entry No. 41, Docket Entry No. 42; July 26, 2013, e-mail, Exhibit B to Plaintiff's Response, Docket Entry No. 66.

enough to include both factoring companies and purchasers of bad debts, could perhaps be defined more precisely, it is neither inaccurate nor misleading. <u>Wagner</u>, 1998 WL 127812 at *1.

Toliver argues that § 1681e(b)'s goal of ensuring "maximum possible accuracy of the information" in a consumer's credit file compels use of the Metro 2 code "48" to report the LVNV account.[46] The CRRG defines code "48" as the code that should be used to identify a creditor as a "Collection Agency/Attorney."[47] The CRRG defines a "third party collection agency" as "a company or individual who specializes in collecting outstanding debts for other businesses or individuals."[48] Thus, the CDIA draws a distinction between those who attempt to collect on debts that they own (debt buyers) and those who attempt to collect on debts owned by another (third-party collection agencies).

The FDCPA defines the term "debt collector" to include both third-party collection agencies and debt buyers who purchase debts after they are in default. <u>Perry v. Stewart Title Co.</u>, 756 F.2d 1197, 1208 (5th Cir. 1985). It also clearly defines the prohibitions and obligations to which such persons are subject. 15 U.S.C. § 1692, <u>et seq.</u> Nowhere does the FDCPA indicate that a CRA's obligation under § 1681e(b) to "follow reasonable procedures

---

[46]Complaint, Docket Entry No. 1, p. 15-17 ¶ 42.

[47]Excerpt of CRRG, Exhibit J to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 10-3, Docket Entry No. 42.

[48]<u>Id.</u> at 10-1.

to assure maximum possible accuracy" is altered by a particular creditor's status as a debt collector under § 1692(a). Thus, use of the code "0C" to identify LVNV as "[a] company . . . who purchases accounts (generally non-performing debts) with the intent of collecting debts owed," an undeniably accurate description of LVNV's business, is not rendered inaccurate simply because LVNV might also be a debt collector under § 1692(a). In fact, use of the Metro 2 code "48" to describe LVNV, a code that specifically excludes the type of debt purchasing in which LVNV engages, would be even less accurate than the code that Toliver complains about.

Toliver has not produced any evidence to support her claim that Experian ever characterized the LVNV account as belonging to a factoring company, nor has she produced any evidence that Experian ever intimated to anyone else that it should be characterized as such. None of her Experian credit reports describe the LVNV account as belonging to a factoring company.[49] Furthermore, the evidence produced by both parties indicates that the developers of the credit scoring models know or have access to the definitions of the Metro 2 codes.[50] That the models may treat

---

[49]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[50]Affidavit of Evan Hendricks ("Hendricks Affidavit"), Exhibit F to Plaintiff's Response, Docket Entry No. 66, p. 3; see
(continued...)

the "OC" code as identifying a factoring company account does not make the code itself, which is clearly defined to include debt buyers like LVNV, inaccurate or misleading.

Accordingly, because the Metro 2 code "OC" accurately described the LVNV account, Experian is entitled to judgment as a matter of law on the issue of whether use of that code to classify the LVNV account on Toliver's credit report violated § 1681e(b).

## B.   Use of the Metro 2 Code "O" to Classify the LVNV Account Was Accurate

Toliver argues that use of the Metro 2 code "O" to classify the LVNV account was inaccurate.[51]  She asserts that because Sears, the original creditor, "charged off" the account prior to its purchase by LVNV, it was no longer an "open" account, and that use of the "O" code was thus inaccurate.[52]  She also argues that the account should have been reported as "charged off," and that had it

---

[50](...continued)
also Hughes Report, Exhibit L to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 4, Docket Entry No. 42 (describing the Metro 2 Format as "a standard format for the entire credit reporting industry" and noting that "Experian provides all of its data furnishers with . . . a copy of the CRRG," thus indicating that access to the definitions of the Metro 2 codes is widespread within the credit reporting industry); Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 3 (asserting that "[f]ew Americans even know [the CRRG] exists," but acknowledging its use throughout the credit reporting industry).

[51]Complaint, Docket Entry No. 1, Pp. 15-17 ¶ 42.

[52]Id.

been reported in such a manner the negative effect on her credit score would have been less significant.[53]

In its Motion for Summary Judgment, Experian again argues: (1) that the Metro 2 code "O" was accurate; (2) that Experian followed reasonable procedures to assure maximum possible accuracy; (3) that Toliver has not produced any evidence that use of the "OC" code caused her any damages; and (4) that Toliver has not produced any evidence that Experian acted willfully, which is required if Toliver is to recover any punitive damages from Experian.[54] Because use of the "O" code was accurate, it is unnecessary to address Experian's other arguments for summary judgment.

The "O" code, like the "OC" code, is clearly defined in the CRRG. According to the CRRG, "O" identifies an account as "open," which is defined to mean "accounts where the entire balance is due upon demand or that have one payment due as scheduled."[55] Toliver does not dispute that she is liable for the LVNV account.[56] She has produced no evidence to suggest that the entire balance is not due

---

[53]Id.

[54]Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 5-6.

[55]Glossary of Terms, Exhibit C3 to Trans Union LLC's Motion for Summary Judgment, Docket Entry No. 38, p. 7-5; see also Hughes Report, Exhibit L to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 6, Docket Entry No. 42 ("[A]n unpaid collection account is considered due and owing.").

[56]Toliver Deposition, Exhibit F to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 69:19-69:25, 95:7-95:23, Docket Entry No. 44.

upon demand. Toliver's dispute with use of the "O" code to describe the LVNV account is the CRRG's use of the word "open" to define it, which she argues can be misinterpreted to mean that the account was not "charged off" by the original creditor.[57]  As a result, she claims, the credit scoring models treat the account as "a fresh and new delinquency from the original lender."[58]

Like the definition of the term "debt buyer," the CRRG's definition of the term "open" leaves no room for Toliver's proposed misinterpretation.  Indeed, in addition to clearly defining the term (and the "O" code) as an "[a]ccount where the entire balance is due upon demand," the CRRG's glossary entry for the term "open" indicates that it is used by "Collection Agencies, Child Support Agencies, Debt Buyers, Student Loan Guarantors, the U.S. Department of Education (as guarantor) and Utility Services' payment plans."[59]  This definition provides no support for Toliver's argument that the code reflects "a fresh and new delinquency from the original lender."  In fact, the LVNV entry on her Experian credit report clearly identifies the original lender as "CITIBANK SEARS."[60]

---

[57]Complaint, Docket Entry No. 1, pp. 15-17 ¶ 42.

[58]<u>Id.</u> at 16 ¶ 42.

[59]Glossary of Terms, Exhibit C3 to Trans Union LLC's Motion for Summary Judgment, Docket Entry No. 38, p. 7-5.

[60]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry (continued...)

Furthermore, in addition to reporting the account using the "O" code, debt buyers attempting to collect on an account are instructed by the CRRG to also use the Metro 2 code "93" to report the account's "status."[61]   This designation indicates that the "account [was] assigned to internal or external collections."   The LVNV account at issue included the "93" status code in addition to the "O" code, consistent with the CRRG's guidelines.[62]   Thus, in addition to reporting the LVNV account as "due upon demand," LVNV also reported that it was assigned to collections.   Given that these codes are well-defined and the definitions known and accessible to those in the credit reporting industry, it would be unreasonable to conclude that the codes are misleading.[63]

Accordingly, because Toliver has failed to establish a genuine issue of material fact as to whether use of the Metro 2 code "O" to report the LVNV account was inaccurate, Experian is entitled to summary judgment on this § 1681e(b) claim.

---

[60](...continued)
No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[61]Excerpt of CRRG, Exhibit J to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 10-3, Docket Entry No. 42.

[62]Id.; Hughes Report, Exhibit L to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 5, Docket Entry No. 42; see also Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 11 ("LVNV Funding reported with an Account Type of Open and a Rating of Charge-off.").

[63]Hendricks Affidavit, Exhibit F to Plaintiff's Response, Docket Entry No. 66, p. 3; Hughes Report, Exhibit L to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 4, Docket Entry No. 42.

**C.   Appearance of Recency**

Toliver argues that Experian "[a]llow[ed] a six (6) year old debt [to] look like a new and recent delinquency."[64]   Toliver advances two theories for why the LVNV debt appears more recent than it should on her Experian credit report: (1) it is misclassified as an "open" account with a "factoring company" and that classification misleads the credit scoring models into thinking that it is a recent delinquency;[65] and (2) the various dates reported on the Experian credit report make the account appear more recent than it actually is.[66] For the reasons discussed in §§ IV.A and IV.B above, Toliver's first argument fails because the coding was accurate as a matter of law.  Accordingly, the court will only address Toliver's claims regarding the dates listed on her Experian credit reports.

Toliver has presented excerpts from two Experian credit reports dated September 6, 2011, and January 10, 2012.[67]   In addition, Experian has produced excerpts from two credit reports dated August 25, 2011, and September 5, 2011.[68]  A review of these

---

[64]Complaint, Docket Entry No. 1, p. 17 ¶ 42.

[65]Id. at 4-5 ¶¶ 14-25, 6 ¶ 29, 15-17 ¶ 42; Plaintiff's Response, Docket Entry No. 66, pp. 14, 30.

[66]Complaint, Docket Entry No. 1, pp. 4-5 ¶¶ 22-23, 6 ¶ 29, 15-17 ¶ 42; Plaintiff's Response, Docket Entry No. 66, pp. 14, 30.

[67]Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[68]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, Docket
(continued...)

reports indicates that the dates provided in certain entries on each of the reports could be "misleading in such a way and to such

---

[68] (...continued)
Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, Docket Entry No. 43. In its Motion for Summary Judgment, Experian identifies each of these reports as a "Consumer Disclosure." Defendant Experian Information Solution's List of Exhibit's, Docket Entry No. 42, p. 1. The court notes that this is technically a more accurate description of the reports than the term "credit report" because, as the header of each report indicates, the reports were prepared for Toliver rather than a third party. Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19; Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, Docket Entry No. 43. The FCRA broadly defines the term "consumer report" to mean "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for credit." 15 U.S.C. § 1681a(d)(1)(A). Because the reports produced by the parties were prepared for Toliver rather than a third party, they do not meet the definition of "consumer report" under the statute. See Cousin v. Trans Union Corp., 246 F.3d 359, 367-68 (5th Cir. 2001) (suggesting that reports prepared solely for the consumer who is the subject of the report are not "consumer reports" for purposes of § 1681e(b) liability). However, because the FCRA requires consumer disclosures to consist of "complete copies of the[] consumer['s] reports," the court can infer that the consumer disclosures produced by the parties accurately reflect the information contained in the consumer reports received by FICO and used to calculate Toliver's credit score. Gillespie v. Trans Union, 482 F.3d 907, 909 (7th Cir. 2007). This inference is supported by the fact that both parties have used these reports to explain the changes in Toliver's FICO credit scores. Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 9-10; Defendant Experian's Reply Brief in Support of its Motion for Summary Judgment ("Experian's Reply"), Docket Entry No. 73, pp. 14-15. For ease of discussion, the court will refer to the produced reports as "credit reports," as the parties have done in their briefs.

an extent that [they] can be expected to adversely affect credit decisions." <u>Sepulvado</u>, 158 F.3d at 896.

There are eight entries where dates are provided for the LVNV account on Toliver's Experian credit reports.[69] Toliver appears to dispute the accuracy of five of these entries: (1) "Date opened," (2) "First reported," (3) "Date of Status," (4) "Payment history," and (5) "Account history."[70]

### 1.   Date Opened

The date entry "Mar 2006" is printed under the heading "Date opened" in Toliver's Experian credit reports.[71]   This date is consistent among all four Experian credit reports that the parties produced.[72]   Toliver argues that "debt purchasers must 'stand in the shoes' of the original creditors and must report the same dates . . . as the original creditors."[73]   She further argues that

---

[69]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[70]Complaint, Docket Entry No. 1, pp. 5 ¶ 23, 6 ¶ 29, 16-17 ¶ 42; Plaintiff's Response, Docket Entry No. 66, p. 14.

[71]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[72]<u>Id.</u>

[73]Complaint, Docket Entry No. 1, p. 5 ¶ 23.

-24-

reporting the LVNV account with a "Date opened" of "Mar. 2006," rather than using the date that the account was opened with Sears, the original creditor, caused the LVNV account to have a disproportionate negative impact on her credit score.[74]

In Sepulvado, the Fifth Circuit held that an entry on a credit report that indicated that an obligation had been "assigned" to the reporting creditor was not "facially misleading or inaccurate." Sepulvado, 158 F.3d at 892, 896. The plaintiffs in Sepulvado were denied a mortgage because of an entry on a credit report prepared by Advanced Credit Technology (ACT) that contained an "open date" of March 1994 and "indicated that . . . no payments had ever been made." Id. at 892-94. In fact, the entry was related to a deficiency from a foreclosure that occurred in 1988. Id. at 891-92. The mortgage provider interpreted the entry to reflect that the plaintiffs had taken out a loan in March 1994 "and then immediately defaulted without making any payments." Id. at 893. ACT had retrieved the information that it used to prepare the plaintiff's credit report from the defendant, CSC. Id. at 892. CSC's entry for the same account, however, did not have an "open date." Id. at 893 n.4. Instead, the CSC entry indicated that the account had been "assigned" to the reporting creditor in March of 1994. Id. In reversing judgment for the plaintiffs, the Fifth Circuit held that CSC's entry was accurate because "CSC's use of

---

[74] Id. at 6 ¶ 29, 15-17 ¶ 42.

the term 'assigned' (as compared to the phrase 'open date' in ACT's report) would have placed a creditor on notice that the obligation existed before the March 1994 assignment date." Id. at 896.

Similar to the ACT report in Sepulvado, Toliver's Experian credit report contained an entry titled "Date opened" with the date that the reporting creditor obtained the debt, rather than the date that the debt actually arose, and indicated that no payments had ever been made. A reasonable creditor could interpret this, just as the mortgage provider in Sepulvado did, to mean that Toliver took out a loan in March of 2006 and immediately defaulted without making any payments. Although Toliver's Experian credit reports do identify the original creditor, while the CSC report in Sepulvado did not, id. at 893 n.4, a reasonable creditor might nonetheless conclude that the debt, though once owned by another, was opened and defaulted on in March 2006. The Fifth Circuit held that failure to identify the original creditor did not render the report misleading because the use of assignment language "would have placed a creditor on notice that the obligation existed before" the assignment date. Id. at 896. Here, there is no language to indicate that "Date opened" means anything other than the date that the consumer opened the account, as it does for the majority of accounts on Toliver's credit report.[75] Thus, although it is a very

---

[75]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 3-21, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer (continued...)

close call, drawing all inferences in a light most favorable to Toliver, a reasonable jury could find that the "Date opened" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Sepulvado, 158 F.3d at 896.

Toliver has produced no evidence, however, that K. Hovnanian ever viewed the "Date opened" notation on her Experian credit report. Instead, she argues that "allow[ing] a six year old debt [to] look like a new and recent delinquency" caused her credit score to decline so drastically that she no longer qualified for a K. Hovnanian mortgage.[76] However, Toliver has not produced any evidence to suggest that the open date actually caused a negative impact to her credit score. She presents evidence that the FICO credit scoring model will afford more weight to recent delinquencies, but does not indicate that the open date on the LVNV account, which matches the charge-off date with the original creditor, in any way makes her delinquency appear more recent than it actually is. Thus, because Toliver has not produced any evidence to suggest that the open date or use of the phrase "Date opened" on her Experian credit report caused her any damages,

_____

[75](...continued)
Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 5-10, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[76]Complaint, Docket Entry No. 1, p. 17 ¶ 42.

Experian is entitled to summary judgment on her § 1681e(b) claim on the "Mar. 2006" "Date opened" entry.

### 2.  First Reported

Immediately beneath the "Date opened" entry on Toliver's Experian credit reports is an entry titled "First reported." The date for this entry is not consistent among all four reports. While the August and September reports read "Aug 2011," the January 2012 report reads "Jan 2012."[77] Toliver alleges that the "date of August 2011 was added out of nowhere."[78] Toliver has produced evidence to suggest that the date in this entry is used in credit scoring models and that a more recent date in this entry will have a greater negative impact on a consumer's credit score.[79]

> (a)  Toliver has raised a genuine issue of material fact regarding the accuracy of the "First reported" entry.

According to the evidence produced by Toliver, the "First reported" entry should reflect either the date that LVNV first reported the account on her credit report or the date that the debt was first reported as a major delinquency with Sears, the original

---

[77]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[78]Plaintiff's Response, Docket Entry No. 66, p. 14.

[79]Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 9–10.

creditor.[80]   In either case, that date would be prior to August 2011, the earliest date that is recorded on the Experian credit reports produced by the parties.[81]   Experian has produced no evidence to suggest that such an interpretation of the "First reported" entry is incorrect.   Thus, Toliver has produced sufficient evidence to establish a genuine issue of material fact as to the accuracy of the dates reported in the "First reported" entry on her Experian credit report.

> **(b)   Toliver has raised a genuine issue of material facts to the reasonableness of Experian's procedures.**

"Section 1681e(b) does not impose strict liability for any inaccurate credit report, but only a duty of reasonable care in preparation of the report."   Thompson, 682 F.2d at 513.   "[T]he plaintiff must show that the inaccuracy resulted from a negligent or willful failure to use reasonable procedures when the report was prepared."   Sepulvado, 158 F.3d at 896.   "The standard of conduct by which the trier of fact must judge the adequacy of agency procedures is what a reasonably prudent person would do under the circumstances."   Thompson, 682 F.2d at 513.

---

[80]Id. at 11.

[81]Id. at 11, 17, 19; Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43.

There is a divergence among the circuits as to the "nature and quantum of proof, if any, beyond the mere fact of an inaccuracy, that a plaintiff must provide in order for a reasonable trier of fact to conclude that reasonable procedures were not followed." Philbin v. Trans Union Corp., 101 F.3d 957, 964 (3d Cir. 1996), abrogated on other grounds by Cortez v. Trans Union, LLC, 617 F.3d 688 (3d Cir. 2010). The D.C. Circuit has held that "a plaintiff cannot rest on a showing of mere inaccuracy, shifting to the defendant the burden of proof on the reasonableness of procedures for ensuring accuracy." Stewart v. Credit Bureau, Inc., 734 F.2d 47, 51 (D.C. Cir. 1984). Under Stewart "a plaintiff must minimally present some evidence from which a trier of fact can infer that the consumer reporting agency failed to follow reasonable procedures in preparing a credit report," but "a plaintiff need not introduce direct evidence of unreasonableness of procedures: In certain instances, inaccurate credit reports by themselves can fairly be read as evidencing unreasonable procedures." Id. at 51-52. Such instances include the presence of inconsistencies between multiple reports on the same consumer or entries that are inconsistent with the rest of a consumer's file. Id. at 52-53; see also Cortez, 617 F.3d at 709 (reiterating the holding in Philbin that inconsist-encies between two different reports concerning a single consumer are sufficient for a plaintiff to withstand a motion for summary judgment on a claim under § 1681e(b)).

The Ninth Circuit has held that once a consumer "present[s] evidence tending to show that a credit reporting agency prepared a report containing inaccurate information . . . an agency can escape liability if it establishes that an inaccurate report was generated despite the agency's following reasonable procedures." Guimond, 45 F.3d at 1333. Similarly, the Eleventh Circuit has held that once a plaintiff satisfies her initial burden by producing evidence to suggest inaccurate information in her credit report, "[t]he agency can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures." Cahlin, 936 F.2d at 1156. As noted in Philbin, under Guimond and Cahlin "once a plaintiff has demonstrated inaccuracies in the report, a defendant could prevail on summary judgment only if it were to produce evidence that demonstrates as a matter of law that the procedures it followed were reasonable." Philbin, 101 F.3d at 965.

With respect to the "First reported" entry on her credit report, Toliver has produced sufficient evidence to satisfy either standard. She has produced two inconsistent credit reports, one dated September 6, 2011, with a "First reported" date of "Aug. 2011," and one dated January 10, 2012, with a "First reported" date of "Jan. 2012."[82] In addition, though her Experian credit reports contain at least four other accounts identified as collection

---

[82]Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

accounts with open dates between 2006 and 2008, none of these accounts have a "First reported" date as recent as the LVNV account, which shows a "First reported" date over five years after the open date.[83]   Toliver's evidence suggests that LVNV first reported the account as early as 2006, and Experian has produced no evidence to suggest otherwise.[84]

Experian asserts that it "has extensive procedures for assuring the maximum possible accuracy of reported credit information," including "sophisticated computer programs and software" and continual testing and upgrades to its databases.[85] However, Experian has not produced any evidence to explain why an entry that implicitly suggests that it should remain constant (an account can only be reported for the first time once), is nonetheless inconsistent between reports. Accordingly, drawing all inferences in a light most favorable to Toliver, a reasonable jury could find that Experian's procedures with regard to the "First reported" entry were not reasonable.   See Cousin v. Trans Union

---

[83]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 3-7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 8-10, Docket Entry No. 43.

[84]Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 11.

[85]Iwanski Declaration, Exhibit A to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 3 ¶ 6, Docket Entry No. 42.

Corp., 246 F.3d 359, 368 ("In the majority of cases, reasonableness is a question for the jury.").

> (c)   Toliver has produced sufficient evidence to suggest that the inaccuracy caused her alleged damages.

Experian argues that Toliver has not produced sufficient evidence to create a genuine issue of material fact as to whether her damages were cased by Experian.[86]  However, Toliver has produced three credit score reports containing credit scores allegedly based on information obtained from Experian from which a reasonable jury could conclude that the disputed date entries on her Experian credit report caused her credit score to drop so significantly that she no longer qualified for a mortgage from K. Hovnanian.

First, Toliver produces a credit score report dated October 3, 2011, which contains a credit score for Experian of 694.[87]  She asserts that at the time that this credit score was calculated several delinquent accounts, including the LVNV account, contained a consumer dispute notation.[88]  She asserts that when accounts contain such a notation they are excluded from the credit scoring model.[89]  Next, she produces a credit score report dated October 17,

---

[86]Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 12.

[87]Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 5.

[88]Id.

[89]Complaint, Docket Entry No. 1, pp. 15-16, ¶ 42; Plaintiff's Response, Docket Entry No. 66, pp. 13-14; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 5.

2011, which contains a credit score for Experian of 618.[90]   The credit score on this report was calculated after Toliver had contacted her creditors and had the consumer dispute notations removed from all of her accounts.[91]   One of the reason codes given to explain why her credit score was not higher was:  "time since delinquency is too recent or unknown."[92]   Finally, Toliver produces a credit score report dated April 6, 2012, which contains a credit score for Experian of 663.[93]   The only account in dispute when this score was calculated was the LVNV account.[94]   Notably, the reason code referring to the recency of delinquency is not included in this report.[95]   Accordingly, a reasonable jury could conclude that, had the LVNV account been reporting accurately with dates comparable to the other collection accounts on her Experian credit report, her credit score might not have been so impacted.   Because K. Hovnanian required a minimum credit score of 660 in order to qualify for a mortgage,[96] a reasonable jury might conclude that the impact that the LVNV account had on Toliver's credit score caused

---

[90]Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 6.

[91]Id.

[92]Id.

[93]Id. at 7.

[94]Id.

[95]Id.

[96]Id. at 4.

her to no longer qualify for a mortgage.  Thus, Experian's motion for summary judgment as to Toliver's § 1681e(b) claim with regard to the "First reported" entry must be denied.

### 3. Date of Status

Immediately beneath the "First reported" entry on Toliver's Experian credit report is an entry titled "Date of status."  Like the "First reported" entry, the dates reported for the "Date of status" entry are not consistent among all four of the reports produced.  The dates entered mirror those for the "First reported" entry, with the August and September reports reading "Aug 2011" and the January 2012 report reading "Jan 2012."[97]

> (a) Toliver has raised a genuine issue of material fact regarding the accuracy of the "Date of status" entry.

Toliver has produced an expert report asserting that "'Date of Status' is a date that should mark the day a debt was deemed uncollectible and thus charged off."[98]  A creditor presented with Toliver's Experian credit report could reasonably interpret the "Date of status" entry to mean exactly that.  It would be

---

[97]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[98]Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, p. 11.

reasonable for a creditor to interpret the entry as referring to the "Status" entry also present in the report.  The first sentence in the "Status" entry reads "Collection account."[99]  The "Status" entry also repeats the information found in the "Recent balance" entry and provides the date when the account is scheduled for deletion from Toliver's credit report.[100]  The only information in the "Status" entry that is not accompanied by a date to identify the recency of the information is the phrase "Collection account."[101]

It would be reasonable for a creditor to interpret the "Date of status" entry to refer to the account's status as a "Collection account," as printed under the entry titled "Status."  Cf. Baker v. Capital One Bank, No. CV 04-1192 PHX-NVW, 2006 WL 2523440, at *4-*5 (D. Ariz. 2006) ("The 'status' that the 'Date of status' apparently

---

[99]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[100]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[101]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

corresponds to is also noted: 'Status: Included in bankruptcy/ Account charged off.'"). A review of the other accounts listed in Toliver's Experian credit report reveals several accounts with "Status" entries as simple as "Closed," and "Open/Never late."[102] The "Date of status" entries for accounts with a "Closed" status reflect the date that the account was closed, as revealed by the entries under the heading "Payment history."[103] The "Date of status" entries for accounts with an "Open/Never late" status also match the payment history on those accounts, revealing that payments were made on time up to the date of the report and thus "Never late."[104] Furthermore, the "Date of status" entry for all but one of the other accounts identified in the "Status" entry as a "Collection account" on Toliver's Experian credit reports reflect the dates that the accounts became collection accounts, as revealed by their payment histories.[105]

---

[102]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 8-21, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 6-7, Docket Entry No. 43.

[103]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 8-9, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 6-7, Docket Entry No. 43.

[104]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 10-11, 13-14, 16, 19-21, Docket Entry No. 43.

[105]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, (continued...)

The only evidence that Experian has produced as to the "Date of status" entry is in a summary of its response to Toliver's dispute letter where Experian "explained that the status date of an account can change from month to month, for example, if Ms. Toliver had begun paying on the account and creating good credit history."[106]  However, Toliver never made any payments on the LVNV account, nor is there any evidence of any other occurrence that would have changed the account's status as a collection account.[107] Experian also fails to explain why the "Date of status" entry for other collection accounts on Toliver's Experian credit reports accurately reflect the date that the accounts became collection accounts.[108]  Cf. Baker, 2006 WL 2523440 at *5 (declining to find a "Date of status" entry accurate because it was unclear "whether, for accounts with status of 'included in bankruptcy,' the 'Date of status' field completed by the creditor should correspond with the

---

[105](...continued)
pp. 3-6, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 8-10, Docket Entry No. 43.

[106]Iwanski Declaration, Exhibit A to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 6 ¶ 19, Docket Entry No. 42.

[107]Henderson Declaration, Exhibit E to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 2 ¶ 6, Docket Entry No. 42.

[108]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 3-6, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 8-10, Docket Entry No. 43.

date of the bankruptcy"). Furthermore, the CRRG's instructions to debt buyers make no mention of a date of status entry, though they do instruct debt buyers to report an entry for "Date of Last Payment," which is defined as "the date of the most recent payment made to the debt buyer or third party collection agency."[109]

Toliver has produced evidence to suggest that the FICO credit scoring model affords greater weight to recent delinquencies, and that the "Aug. 2011" "Date of status" entry on her Experian credit report could make it appear as though the account became a collection account more recently than it actually did.[110] Thus, drawing all inferences in a light most favorable to Toliver, a reasonable jury could find that the "Date of status" entry was "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Sepulvado, 158 F.3d at 896. Accordingly, Experian's motion for summary judgment as to the accuracy of the "Date of Status" entry must be denied.

(b)   Experian followed reasonable procedures.

Toliver has failed to establish a genuine issue of material fact as to the reasonableness of Experian's procedures with regard to the "Date of status" entry. Experian asserts that it "currently stores about 2.6 billion trade lines, from approximately 30,000

---

[109]Excerpt of CRRG, Exhibit J to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 10-5, Docket Entry No. 42.

[110]Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 9-11.

different sources, belonging to over 200 million customers, with about 50 million updates daily."[111]  "One can easily see how, even with safeguards in place, mistakes can happen.  But given the complexity of the system and the volume of information involved, a mistake does not render the procedures unreasonable."  Sarver v. Experian Info. Solutions, 390 F.3d 969, 972 (7th Cir. 2004).

Unlike the "First reported" entry, which by implication should contain only a single date that is not subject to continual updating, the "Date of status" entry is periodically updated to reflect changes in status, as well as to reflect recent payments on open accounts with the designation "Never late."[112]  Thus, absent "notice of prevalent unreliable information from a reporting lender, which would put Experian on notice that problems exist" with its procedures, it was reasonable for Experian to rely on LVNV to provide accurate information for the "Date of status" entry. Id.; see also White v. Credit Bureau of Baton Rouge, No. 92-3662, 1993 WL 82324 at *1 (5th Cir. Mar. 18, 1993) (per curiam) ("The statute simply requires that a credit bureau use 'reasonable procedures' to assure accuracy of the information reported. . . . That better or more stringent procedures may have produced a

---

[111]Iwanski Declaration, Exhibit A to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 2 ¶ 4, Docket Entry No. 42.

[112]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 10-11, 13-14, 16, 19-21, Docket Entry No. 43.

different result is simply not the test."). Thus, Experian is entitled to judgment as a matter of law on Toliver's § 1681e(b) claim regarding the "Date of status" entry.

    4.  <u>Payment History</u>

    Toliver argues that her Experian credit report "misrepresent[ed] the payment history" of her account.[113] She points to an entry where LVNV "added a missed payment dated 8/11"[114] and asserts that "a date of August 2011 was added out of nowhere."[115] However, she has not produced any evidence to suggest that such reporting was inaccurate. Toliver admitted in her deposition that between 2003 and 2005 she stopped making payments on several of her credit accounts and that she never fully paid off the Sears credit card account acquired by LVNV.[116] Experian has produced evidence that Toliver never made any payments on the LVNV account.[117]

    Toliver's August and September Experian credit reports each contain a single entry under the title "Payment history" indicating

---

[113]Complaint, Docket Entry No. 1, p. 6 ¶ 29.

[114]<u>Id.</u> at 16.

[115]Plaintiff's Response, Docket Entry No. 66, p. 14.

[116]Toliver Deposition, Exhibit F to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp.63:13–66:11, 69:19–69:24, Docket Entry No. 44.

[117]Henderson Declaration, Exhibit E to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 2 ¶ 6, Docket Entry No. 42.

that in August 2011 the LVNV account was a collection account.[118]
Similarly, her January 2012 Experian credit report contains only
one entry under the title "Payment history" that indicates that in
January 2012 the LVNV account was a collection account.[119] Although
inconsistent with the payment history entries for other collection
accounts originating around the same time period,[120] the LVNV
entries are not inaccurate.  Toliver has not made any payments on
the LVNV account, and the "Payment history" entries reflect exactly
that.  Thus, Experian is entitled to judgment as a matter of law on
Toliver's § 1681e(b) claim regarding the "Payment history" entries
on her Experian credit reports.

    5.   <u>Account History</u>

    Toliver makes essentially the same arguments regarding the
"Account history" entries on her Experian credit reports that she
makes regarding the "Payment history" entries.  She asserts that
LVNV "added a missed payment dated 8/11, which drives the credit

---

[118]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to
Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7,
Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure,
Exhibit D to Experian's Motion for Summary Judgment, Docket Entry
No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A
to Plaintiff's Response, Docket Entry No. 66, p. 17.

[119]Johansson Affidavit, Exhibit A to Plaintiff's Response,
Docket Entry No. 66, p. 19.

[120]<u>See</u> Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to
Experian's Motion for Summary Judgment, Docket Entry No. 41,
pp. 3-7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer
Disclosure, Exhibit D to Experian's Motion for Summary Judgment,
Docket Entry No. 41, pp. 8-10, Docket Entry No. 43.

score lower as activity on the account rather than letting it age."[121] This entry, under the heading "Actual amount paid ($)" and present on all of the produced Experian credit reports, indicates that in August of 2011 Toliver paid "0" on the LVNV account.[122] While Toliver argues that reporting "0" rather than not reporting anything at all causes a disproportionate impact on her credit score by indicating "activity on the account," she has failed to produce any evidence to suggest that reporting "0" is in any way inaccurate. Toliver in fact paid nothing on the LVNV account in August of 2011,[123] and the "0" entry reflects exactly that. Thus, Experian is entitled to judgment as a matter of law on Toliver's § 1681e(b) claim regarding the "Account history" entry on her Experian credit report.

### 6. Identity of the Original Creditor

Toliver argues that the way the LVNV account is reported on her Experian credit report makes the account "look[] like it is being reported by an original lender."[124]   However, as explained

---

[121]Complaint, Docket Entry No. 1, p. 17 ¶ 42.

[122]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[123]Henderson Declaration, Exhibit E to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 2 ¶ 6, Docket Entry No. 42.

[124]Complaint, Docket Entry No. 1, p. 17 ¶ 42.

above, use of the Metro 2 code "OC" clearly indicates that LVNV is a debt buyer.  Moreover, the LVNV account contains an entry identifying the original lender as "CITIBANK SEARS."[125] Toliver has failed to present any evidence to suggest that this reporting makes the account look like anything other than a collection account owned by a debt buyer.  Accordingly, Experian is entitled to summary judgment on Toliver's § 1681e(b) claim regarding whether its reporting makes LVNV look like an original lender.

## V. <u>Toliver's Claims Under § 1681i(a)</u>

Section 1681i(a) provides that if a consumer disputes the completeness or accuracy of any item in her file, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file."  15 U.S.C. § 1681i(a).  Experian has provided a detailed account of the procedures that it used in reinvestigating TOLIVER's dispute regarding the LVNV account.[126]  Toliver does not argue that Experian failed to fulfill the various timing and procedural requirements regarding a reinvestigation, only that the procedures it used were

---

[125]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[126]Iwanski Declaration, Exhibit A to Experian's Motion for Summary Judgment, Docket Entry No. 41, pp. 5-7, ¶¶ 14-22, Docket Entry No. 42.

not reasonable under the circumstances.[127]  Toliver argues that, in light of the nature of her disputes, it was unreasonable for Experian to rely exclusively on information that it received via ACDVs from LVNV.[128]

In addressing a claim under § 1681i(a), "'[t]he decisive inquiry' is whether the defendant credit bureau could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.'"  DeAndrade v. Trans Union LLC, 523 F.3d 61, 68 (1st Cir. 2008) (quoting Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997)).  "In a reinvestigation of the accuracy of credit reports, a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th Cir. 1993); see also Cushman, 115 F.3d at 225 (3d Cir. 1997) (holding that "in order to fulfill its obligation under § 1681i(a) 'a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information'" (quoting Henson v. CSC Credit Servs., 29 F.3d 280, 287 (7th Cir. 1994))).

The Third and Seventh Circuits have held that whether the credit reporting agency has a duty to go beyond its original source of information will depend on factors such as whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable and the cost of verifying the accuracy of the

---

[127]Complaint, Docket Entry No. 1, pp. 8–10 ¶ 39.

[128]Plaintiff's Response, Docket Entry No. 66, pp. 19–23.

source versus the possible harm inaccurately reported information may cause the consumer. <u>Cushman</u>, 115 F.3d at 225; <u>Henson</u>, 29 F.3d at 287.   The Fifth Circuit has similarly held that CRAs may sometimes have a duty to go beyond a creditor's response to a disputed item in limited circumstances. <u>See</u> <u>Stevenson</u>, 987 F.2d at 293 (holding that it was unreasonable for the defendant CRA to rely solely on CDVs in its reinvestigation given the complexity of the consumer's dispute); <u>Pinner</u>, 805 F.2d at 1262 (holding that it was unreasonable for a CRA to contact only the creditor for verification of a consumer's dispute when the CRA knew of a personal dispute between the creditor and the consumer).

Because Toliver has failed to establish a genuine issue of material fact as to the accuracy of several of the entries in her Experian credit report, the § 1681i(a) claims related to those entries must fail as a matter of law. <u>See</u> <u>DeAndrade</u>, 523 F.3d at 67 (holding that a claim brought under § 1681i(a) must fail absent a genuine issue of material fact as to accuracy and noting that "the weight of authority in other circuits indicates that without a showing that the reported information was in fact inaccurate, a claim brought under § 1681i must fail"). Because Toliver has not established a genuine issue of material fact as to whether the "Date opened" entry caused her any damages, her § 1681i(a) claim regarding that entry must fail. <u>See</u> <u>Crabill v. Trans Union, L.L.C.</u>, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of

credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages' . . . under the Fair Credit Reporting Act." ), quoted in Wagner v. BellSouth Telecomms., Inc., No. 12-31080, 2013 WL 1363900, at *2 (5th Cir. Apr. 5, 2013) (per curiam). Accordingly, the court will only address Toliver's claims under § 1681i(a) regarding the "First reported" and "Date of status" entries on her Experian credit reports.

## A.   The "First Reported" Entry

Experian argues that its reliance on information from LVNV contained in ACDVs was reasonable as a matter of law.[129]   However, Experian has not offered any explanation as to why an entry that, according to its title, should reflect a single date known to Experian was nonetheless allowed to be changed regularly to reflect more recent reporting.   The most that the court can infer from the evidence presented is that the "First reported" entry is meant to reflect the date that the creditor first reported the account to Experian.   Experian should know this date.   Weighing the cost of verifying the accuracy of this date against the allegedly possible harm that inaccurately reporting it may cause the consumer, a reasonable jury could conclude that Experian's reinvestigation in this case was unreasonable.   See Cushman, 115 F.3d at 225; Henson, 29 F.3d at 287.

---

[129]Defendant's Reply, Docket Entry No. 73, pp. 12-14.

Going beyond LVNV's response to the ACDVs in this case may not have involved much more than comparing the date to Experian's own records or clarifying the meaning of the "First reported" entry to LVNV and asking for a response that accurately reflected the date that the account was first reported to Experian.   The evidence produced suggests that LVNV updated the "First reported" entry at least as often as Toliver disputed the accuracy of the LVNV account.[130]   A reasonable jury could conclude that Experian should have known that an account being disputed by the consumer could not have been "First reported" on the date that the creditor replied to its ACDVs.   Thus, Experian is not entitled to summary judgment on Toliver's § 1681i(a) claims regarding the "First reported" entry.

**B.   The "Account Status" Entry**

As noted above in § IV.C.3.(b) addressing Toliver's § 1681e(b) claim, unlike the "First reported" entry, which by implication should contain only one date, whatever it is meant to represent, the "Account status" entry is subject to regular updating to reflect certain payments made by the consumer and changes in the account's status.[131]   Accordingly, Experian could expect this date

---

[130]Sep. 5, 2011, Toliver Consumer Disclosure, Exhibit C to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 7, Docket Entry No. 43; Aug. 25, 2011, Toliver Consumer Disclosure, Exhibit D to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 8, Docket Entry No. 43; Johansson Affidavit, Exhibit A to Plaintiff's Response, Docket Entry No. 66, pp. 17, 19.

[131]Iwanski Declaration, Exhibit A to Experian's Motion for Summary Judgment, Docket Entry No. 41, p. 6 ¶ 19, Docket Entry No. 42.

to change regularly on the credit reports that it prepares, and would not necessarily have been placed on notice of any systemic problems with its procedures for assuring maximum possible accuracy by the fact that LVNV changed the date for this entry. Thus, summary judgment as to Toliver's § 1681e(b) claim was appropriate.

However, "[a] credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice." Henson, 29 F.3d at 286. When a CRA receives notice of a consumer's dispute "it can target its resources in a more efficient manner and conduct a more thorough investigation." Id. at 286-87. Thus, in assessing the reasonableness of a CRA's procedures, "when one goes from the § 1681e(b) investigation to the § 1681i(a) re investigation, the likelihood that the cost-benefit analysis will shift in favor of the consumer increases markedly." Cushman, 115 F.3d at 220. "Judgment as a matter of law, even if appropriate on a § 1681e(b) claim, thus may not be warranted on a § 1681i(a) claim." Id.

Here, Toliver's Experian credit reports contained a "Date of status" that a reasonable jury could find misleading, and Experian "could have uncovered the inaccuracy 'if it had reasonably reinvestigated the matter.'" DeAndrade, 523 F.3d at 68 (quoting Cushman, 115 F.3d at 226). Experian asserts that in response to Toliver's December 2011 dispute letter it "explained that the status date of an account can change from month to month, for

-49-

example, if Ms. Toliver had begun paying on the account and creating good credit history."[132]  However, Experian has produced no evidence that it ever inquired into whether Toliver actually made any payments, or whether her account's status had changed in any way.  Furthermore, a reasonable jury could conclude that Experian's exclusive reliance on LVNV's ACDV responses was unreasonable given that the dates Toliver complained of appear to have come from LVNV's response to a previous ACDV.  Toliver was unable to secure a mortgage until Experian removed the LVNV account from her credit report in May of 2012, after the account had already been reinvestigated twice via ACDV.[133]  Thus, on the evidence presented and drawing all inferences in a light most favorable to Toliver, summary judgment on Toliver's § 1681i(a) claim regarding the "Date of status" entry must be denied.

## VI.   Toliver's Claims Under § 1681n

Section 1681n provides a private cause of action for willful violations of the FCRA.  The Fifth Circuit has held that "[o]nly defendants who engaged in 'willful misrepresentations or concealments' have committed a willful violation and are subject to punitive damages under § 1681n." Stevenson, 987 F.2d at 294 (citing Pinner, 805 F.2d at 1263).  To be willful, such

---

[132]Id. at 6 ¶ 19.

[133]Id. at 7 ¶ 22, Docket Entry No. 42; Toliver Affidavit, Exhibit I to Plaintiff's Response, Docket Entry No. 66, pp. 2-3 ¶¶ 3-4; Defendant's Reply, Docket Entry No. 73, pp. 12-14.

misrepresentations must be the result of either a knowing violation or reckless disregard of the law.  Safeco Ins. Co. of Am. v. Burr, 127 S. Ct. 2201, 2208-10 (2007).  Toliver has produced no evidence that Experian acted willfully.  Thus, Experian is entitled to summary judgment on all of Toliver's claims under § 1681n for willful violations of the FCRA.

## VII.  Conclusions and Order

For the reasons explained above in §§ IV.A and IV.B, the court concludes that Toliver has not raised a genuine issue of material fact for trial as to whether use of the Metro 2 codes "0C" and "O" to report the LVNV account on her credit report was inaccurate.  Thus, the court concludes that Experian is entitled to summary judgment on Toliver's claims under § 1681e(b) and § 1681i(a) with regard to the use of those codes.

For the reasons explained above in §§ IV.C.4 and IV.C.5, the court concludes that Toliver has not raised a genuine issue of material fact for trial as to whether the information contained in the entries titled "Payment history" and "Account history" were inaccurate.  Thus, the court concludes that Experian is entitled to summary judgment on Toliver's claims under § 1681e(b) and § 1681i(a) with regard to these entries.

For the reasons explained above in § IV.C.1, the court concludes that Toliver has not raised a genuine issue of material fact for trial as to whether the date reported under the entry

titled "Date opened" caused her any damages.   Thus, the court concludes that Experian is entitled to summary judgment on Toliver's claims under § 1681e(b) and § 1681i(a) with regard to this entry.

For the reasons explained above in § IV.C.3, the court concludes that Toliver has not raised a genuine issue of material fact for trial as to the reasonableness of Experian's procedures under § 1681e(b) regarding the entry titled "Date of status." Thus, the court concludes that Experian is entitled to summary judgment with regard to Toliver's § 1681e(b) claim regarding the "Date of status" entry.

For the reasons explained above in § VI, the court concludes that Toliver has not raised a genuine issue of material fact for trial as to whether Experian acted willfully with regard to any alleged violation of the FCRA.   Thus, the court concludes that Experian is entitled to summary judgment on Toliver's claims under § 1681n for willful violations of the FCRA.

For the reasons explained above in § IV.C.2, the court concludes that Experian is not entitled to summary judgment for Toliver's negligence claim under § 1681e(b) as it pertains to the entry titled "First reported."   For the reasons explained above in §§ V.A and V.B, the court concludes that Experian is not entitled to summary judgment on Toliver's negligence claims under § 1681i(a) as they pertain to the information reported under the "First reported" and "Date of status" entries.

-52-

Accordingly, Defendant Experian's Motion for Summary Judgment (Docket Entry No. 41) is **GRANTED IN PART** and **DENIED IN PART**.

Toliver has filed Plaintiff's Motion to Strike Experian's Reply to Plaintiff's Response to Experian's Motion for Summary Judgment ("Plaintiff's Motion to Strike Experian's Reply") (Docket Entry No. 76).  The court routinely allows replies to motions even though the local rules do not expressly provide for them, and plaintiff's motion provides no persuasive reason why the court should strike Experian's reply.  Accordingly, Plaintiff's Motion to Strike Experian's Reply (Docket Entry No. 76) is **DENIED**.

**SIGNED** at Houston, Texas, on this 19th day of September, 2013.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE